E. T. & H. K. IDE *v.* BOSTON & MAINE RAILROAD.

May Term, 1909.

Present:   MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 12, 1909.

*Railroads—Fires—Liability—Burden of Proof—Loss of Property—Recovery—Negligence — Setting Fires — Intervening Cause—Obligation of Owner—Contributory Negligence—Evidence—Instructions — Exceptions—Sufficiency—Insurance—Subrogation—Damages—Torts—Interest — Witnesses —Examination by Court—Harmless Error—Opinion Evidence—Value.*

Under P. S. 4510, in an action against a railroad company for loss of property from fire set by its locomotives, where plaintiff proves that the fire was so communicated he is entitled to recover, unless defendant shows that it used due diligence and employed suitable expedients to prevent the injury.

Proof that a blacksmith's shop standing partly on the railroad right of way and partly on the land of the owner had stood there for more than thirty years, with no evidence that the railroad company had ever objected to the location and maintenance of the shop,

was sufficient to show that the shop was rightfully on the right of way.

The granting by a railroad company of a license to construct and maintain a blacksmith's shop partly on its right of way is not *ultra vires*.

Where a blacksmith's shop was rightfully constructed and maintained partly on the land of the owner and partly on a railroad right of way, the liability of the railroad company for the destruction of the shop by fire from its locomotives is not affected by such location, unless the company contracted against liability because of it.

Under P. S. 4510, if a railroad company is at fault, the right of a property owner to recover for the loss of his property by fire set by locomotives does not depend, in the absence of fraud on his part, upon whether he exercised the care of a prudent man; and the imprudent maintenance of his property, if lawful, does not in itself constitute contributory negligence.

The owner of property need not anticipate and guard against the negligence of a railroad company whereby his property may be destroyed by fire from its locomotives, but he may use his property in any lawful way, assuming the risk of loss without fault on the part of the railroad company.

Where fire was set to the roof of a shop by sparks from a locomotive, and started up again after it was considered extinguished, and then the wind changed its direction and carried the fire to other property which was thereby destroyed, the whole fire was the effect of the cause that kindled the fire on the roof of the shop, and neither the change in the wind nor the conduct of the owner was an intervening cause.

Where negligence in setting a fire is established, unexpected changes in the direction and force of the wind whereby the result of the negligence is carried further than it would otherwise have gone does not affect the liability for the damage.

Where a fire has been kindled along the line of a railroad to the knowledge of the owner of adjoining property, he must exercise the care of a prudent man to save his property from destruction, and for any damage to his property by such fire, to which his failure to exercise such care contributes, he cannot recover.

In an action against a railroad company for loss of property from fire set by sparks from a locomotive, whether the owner exercised due

care to protect his property from loss, *held*, under the evidence, a question for the jury.

Where a party presented twenty-three requests for instructions, an exception to the court's failure to comply with each request, so far as it was not complied with, to the omission to charge on the subject-matter of each request so far as there was such omission, and to the charge on the subject-matter of each request in so far as it varied from the request, was too general to reserve any question.

In an action against a railroad company for loss of property by fire communicated by a locomotive to plaintiff's shop standing partly on his own land and partly on the railroad right of way, and from the shop spreading to other of plaintiff's property which it destroyed, where an issue was as to whether the shop was rightfully on the right of way, an instruction that the jury should consider the diligence required of defendant in view of the close proximity of the tracks to the shop was inadequate, as such diligence depended largely on whether the shop was rightfully on the right of way.

But an exception to what the court said, based on the suggestion that the shop located as it was would not charge defendant "with any greater care than if it had been further away," did not raise the question of the inadequacy of the instruction in the respect that the diligence required, in view of the location of the shop, depended largely on whether it was rightfully on the right of way.

A railroad company using on its locomotives the best known spark arresters in practical use performs its full duty as to the kind of spark arrester it shall use.

The rule that where there is a correct and an incorrect instruction on the same point, the charge may be such that the jury will be taken to have felt at liberty to follow either, does not apply where the charge, considered as a whole, makes clear the correct rule of law.

In an action against a railroad company for loss of property by fire communicated by a locomotive, where the uncontradicted evidence showed that no locomotive could draw a train upgrade without emitting sparks, and the court charged that, if the spark arresters used by defendant were as effective in preventing the escape of sparks as any mechanical contrivance in known practical use, they would constitute such suitable expedients as were required by the statute, a previous instruction that the jury must inquire whether

the locomotive that communicated the fire was equipped with as good mechanical devices as were in known practical use, and were "efficient" in preventing the escape of sparks, was not prejudicial, though the word "efficient" refers to the power of a device to produce the specific effect of preventing the escape of sparks.

A fire insurance policy is a contract of indemnity; and, where the property insured is destroyed by fire wrongfully set by a third person, his liability to the insured is primary, while that of the insurer is secondary; and payment to the insured by the insurer works a subrogation to the extent of the payment, regardless of whether the policy, so provides; and after such payment suit against the wrongdoer for the benefit of the insurer is properly brought in the name of the insured alone, as the wrongdoer has no interest in the adjustment between the insured and the insurer.

Though interest, as such, is not an element of damages in tort actions, yet the jury may consider the lapse of time from the accrual of the cause of action to the rendition of the verdict, and may allow in damages on account of that delay a sum not in excess of interest at the legal rate.

In an action against a railroad company for loss of property by fire communicated by locomotives, where an issue was whether plaintiff negligently failed to check the fire, an instruction that if plaintiff proved that the fire was communicated by a locomotive, and if defendant failed to show that it had exercised due diligence and employed suitable expedients to prevent the fire, plaintiff was entitled to a verdict, was error as making plaintiff's negligence after the fire started immaterial; and this was not cured by the subsequent instruction on the question of damages that, if plaintiff failed to exercise the care of a prudent man in endeavoring to prevent the spread of the fire, such failure was contributory negligence, and prevented the recovery of damages for loss sustained after such negligence.

Where a party objected to a question asked by the court during the cross-examination of a witness and excepted to the overruling of the objection, it was not error to confine the witness to a strict answer and leave his further explanation to be elicited by the party objecting.

The rule that, where a designated locomotive is shown to have caused the fire complained of, the evidence must be confined to that

locomotive, does not apply where it does not appear that any particular locomotive caused the fire, and the evidence showed that several trains passed shortly before the fire was discovered.

Where the evidence did not show the particular locomotive that caused the fire, and showed that the inspection of locomotives during a period of six months before and after the fire was the same as at the time of the fire, the court in its discretion properly admitted evidence of the emission of sparks by locomotives during that period.

In an action against a railroad company for loss of property by fire alleged to have been communicated by a locomotive, a witness, who testified as to his opportunities for observing the origin of a fire in the same locality shortly before the fire in question, was properly allowed further to testify that he saw nothing that could have caused the former fire unless it was caused by a locomotive.

Where a witness's answer to a proper question deviated into hearsay and conjecture, the court adequately dealt with the matter by striking out the hearsay and telling the witness that he should not answer what he supposed.

In an action against a railroad company for loss of property by fire alleged to have been communicated by a locomotive, an employee of defendant was properly allowed to testify as to inspections of its locomotives during a period of about six months after the fire, as that aided in determining the period to which evidence as to sparks emitted by locomotives might be extended.

The exclusion of evidence offered by defendant in connection with his cross-examination of plaintiff's witness was not error, where later defendant in putting in his case introduced the same evidence without objection.

In an action against a railroad company for loss of property by fire communicated by a locomotive, where the evidence was conflicting on the issue whether plaintiff asked defendant to send its employees from a station two and one-half miles distant to aid in confining the fire, evidence of the number of men employed by defendant at that station was admissible.

In determining whether the duty of a railroad company required it to send its employees to aid in confining a fire set by its locomotive, the reasonable requirements of its other duties should be considered, such as the operation of the telephone and telegraph office and switches, and also the extent of its control of the men in its employ.

In an action against a railroad company for loss of property by fire communicated by a locomotive, where spark arresters were received in evidence, it was within the discretion of the trial court to allow experiments before the jury with such spark arresters by the use of cinders, not resembling those emitted by locomotives, though the spark arresters when adjusted to the locomotive are set at an angle, so that the size and shape of the apertures were factors merely in the relative efficiency of the devices in question.

In an action against a railroad company for loss of property by fire communicated by a locomotive, where the court allowed plaintiff to use cinders and a spark arrester for experiment before the jury, and thereafter cinders offered by defendant were received as samples of cinders emitted by its locomotives, cinders offered by plaintiff were properly received, on evidence that they resembled cinders emitted by locomotives.

In an action against a railroad company for the loss of a mill by fire communicated by a locomotive, where plaintiff's president and general manager testified that the railroad facilities and water power combined made the location of the mill ideal, and on cross-examination stated that the mill had been rebuilt at another place because the new location was more convenient to plaintiff's main business, and had superior railroad facilities, it was not error to allow him further to state, on redirect examination, as bearing on the reasons why the mill was not rebuilt on the old location, that he did not think that the mill could be rebuilt on the old location for a cash value that could be obtained for it on a sale.

Testimony as to the availability of the water power was admissible, as affecting the value of the mill.

Evidence that, shortly before the fire, extensive repairs had been made on the mill to change it from a custom mill and flour mill into a corn grinding mill for merchant work and carload business in addition to custom work, followed by proof of the value of the remodeled mill, was admissible.

It was error to allow a witness to appraise a mill by giving the value of each part thereof, but his estimate should have been limited to a lump sum for the whole.

A miller of many years' experience, who had helped to install machinery, and knew of the sales of different mills, and who testified fully as to the condition of the mill in question and the nature and extent of the repairs recently made thereon, was competent to estimate the value thereof.

Where the cross-examination shows that a witness's answer to a hypothetical question in chief was not wholly based on the stated hypothesis, it was error to refuse to strike out such answer.

Since exceptions lie only to rulings on questions of law arising on the trial of a cause, the question of the power of the presiding judge to make an order, after the close of the term, relating to furnishing and filing a copy of a transcript of the evidence, is not reviewable on exception.

CASE. Plea, the general issue. Trial by jury at the June Term, 1908, Caledonia County, *Hall,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

Subject to defendant's exception, plaintiff was permitted to show by one E. P. Aldrich that a week or two before the fire in question he saw a freight train go by plaintiff's mill, and that the locomotive emitted sparks; that from fifteen minutes to one-half hour after the train passed fire was discovered within eight or ten feet of the railroad track, and that his wife extinguished it with a teakettle of water; and that he knew of no way in which that fire could have caught except from a locomotive. The opinion states the case.

*Young & Young* for the defendant.

Plaintiff was guilty of contributory negligence. The fire at one time was fully under control, and if plaintiff and its employees had thereafter used due care it would have spread no further. In an action for injuries from fire there can be no recovery for such loss as might have been prevented by the plaintiff by reasonable exertions on its part. 13 Am. & Eng. Enc. of Law, 543; *St. Louis, etc. R. R. Co.* v. *Hecht,* 38 Ark. 357; *Tilley* v. *St. Louis, etc. R. R. Co.,* 49 Ark. 535; *Denver, etc. R. R. Co.* v. *Morton,* 3 Col. App. 155; *Toledo, etc. R. R. Co.* v. *Pender,* 53 Ill. 447; *Chicago, etc. R. R. Co.* v. *Pennel,* 94 Ill. 448; *Tally* v. *Counter,* 97 Mich. 473; *Mississippi Home Ins. Co.* v. *Louisville, etc. R. R. Co.,* 70 Miss. 119; *Waters* v. *Brown,* 44 Mo. 302; *Dogget* v. *Richmond, etc. R. R. Co.,* 78 N. Car. 305; *Mills* v. *Chicago, etc. R. R. Co.,* 76 Wis. 422; *Austin* v. *Chicago etc. R. R. Co.,* 93 Wis. 496; 13 Am. & Enc. of Law, 545, 546; *Toledo, etc. Co.* v. *Pindar et al.,* 53 Ill. 447, 5 Am. Rep. 57;

*Illinois Cent. R. R. Co.* v. *McClelland,* 42 Ill. 355; *Eaton* v. *Oregon R. & N. Co.,* 19 Ore. 391; *Illinois Cent. R. Co.* v. *McKay,* 69 Miss. 139.

If the fire on the shop was communicated from an engine, that was the remote and not the proximate cause of plaintiff's loss.   2 Greenl. Ev. §256; 2 Parsons, Contracts, 456 (1st Ed.); 1 Joyce, Damages, §84; *Sweeney* v. *Merrill,* 38 Kan. 216, 5 Am. St. Rep. 734; *Ryan* v. *New York Cen. R. Co.,* 35 N. Y. 210; *Pennsylvania R. R.* v. *Kerr,* 62 Penn. St. 353; *Hoag* v. *Lake Shore, etc. R. Co.,* 85 Penn. 293.

*Dunnett & Slack* for the plaintiff.

The rule that, where a particular locomotive is shown to have caused the fire complained of, the evidence should be confined to that locomotive, has no application where, as here, defendant denies that any of its locomotives caused the fire in question. *Smith* v. *Central Railway Co.,* 80 Vt. 209; *Grand Trunk* v. *Richardson et al.,* 91 U. S. 454; *Hoskinson* v. *Central Vermont R. R. Co.,* 66 Vt. 618; *Campbell* v. *Mo. Pac.,* 25 L. R. A. 175; *Henderson* v. *Philadelphia, etc. Ry,* 144 Pa. 461; *Field* v. *N. Y. Cen.,* 32 N. Y. 339; *Union Pacific Ry.* v. *De Busk,* 3 L. R. A. 350; *Sheldon* v. *Hudson River R. R. Co.,* 14 N. Y. 218; *Burlington & N. R. R. Co.* v. *Burch,* 27 Am. & Eng. R. R. Cases, (N. S.) 21, (Colo.) 60 Pac. Rep. 6; *McGinn* v. *Platt et al.,* 19 Am. & Eng. R. R. Cases, (N. S.) 245, (Mass.); *Wild* v. *R. R. Co.,* 171 Mass. 245; *Ala. & V. R. Co.* v. *Barrett,* 20 R. R. Cases 141.

Whether defendant used due diligence and employed suitable expedients to prevent the escape of fire in operating their locomotives was a question of fact to be determined by the jury, unless the facts and circumstances bearing upon that issue were so decisive as to leave no room for opposing inferences.   *Place* v. *Grand Trunk Ry. Co.,* 80 Vt. 196; *Morrisette* v. *Can. Pac. Ry. Co.,* 74 Vt. 232; *Boyden, Admr.* v. *Fitchburg R. R.,* 72 Vt. 89; *Farrington* v. *Rutland R. R. Co.,* 72 Vt. 24; *Cleveland* v. *Grand Trunk R. R. Co.,* 42 Vt. 450; *Laird* v. *R. R.,* 62 N. H. 254; *Grand Trunk R. R. Co.* v. *Richardson,* 91 U. S. 454.

The court could not say as a matter of law that the plaintiff was a trespasser in maintaining its blacksmith shop partly within the defendant's right of way in the circumstances disclosed by

the evidence. *Boston Excelsior Co.* v. *Bangor & A. R. Co.*, 93 Me. 52; *Sherman* v. *Maine Central*, 86 Me. 422; *Ingersoll* v. *Stockbridge, etc. R. R. Co.*, 8 Allen 438; *Laird* v. *R. R.*, 62 N. H. 254. Under P. S. 4510, defendant is liable if plaintiff shows that the fire was communicated by a locomotive, unless defendant proves that it exercised the required diligence and used suitable expedients. *Rowell* v. *R. R. Co.*, 57 N. H. 132; *Fero* v. *R. R. Co.*, 22 N. Y. 215; *Matthews* v. *R. R. Co.*, 121 Mo. 298; *West* v. *R. R. Co.*, 77 Iowa 654; 1 Thomp. Neg. 171; *Cincinnati, etc. R. R. Co.* v. *Smock et al.*, 133 Ind. 411; *Milwaukee, etc. Ry.* v. *Kellogg*, 94 U. S. 469.

This Court will not consider a general exception to an entire charge which, with few exceptions, is conceded to be correct; nor will it consider a general exception to the refusal of the court to charge as requested, when, as in this case, the requests are numerous and some are fully complied with, while others are in part. *White* v. *Lumiere, etc.*, 79 Vt. 223; *Kiley* v. *Rutland R. R. Co.*, 80 Vt. 536; *State* v. *Ryder*, 80 Vt. 422; *Davenport* v. *Davenport*, 80 Vt. 400; *Drouin* v. *Wilson*, 80 Vt. 335.

It was the duty of the defendant after it had notice that a fire existed on its right of way, irrespective of how it originated, to use due diligence to prevent its injuring others. *Webb* v. *Rome, etc. R. R. Co.*, 49 N. Y. 421; *Missouri Pac. R. Co.* v. *Platzel*, 38 Am. & Eng. R. R. Cas. 366.

Defendant was not entitled to have any of the insurance paid plaintiff go in mitigation of damages. That is well settled. *Harding* v. *Townsend*, 43 Vt. 536; *Mason* v. *Sainsbury*, 3 Doug. 61; *Clark* v. *Inhabitants, etc.*, 2 B. & C. 254; *Yates* v. *Whyte*, 33 E. C. L. 349; *Propellor Monticello* v. *Gilbert Mollison*, 17 How. 152; *Cunningham* v. *Evansville, etc. Co.*, 102 Ind. 478; *Regan* v. *N. Y., etc. Co.*, 60 Conn. 124; 1 Sedgwick, Damages (7th Ed.) 54; 2 May on Ins. 455; *Weber* v. *Morris, etc. R. R. Co.*, 35 N. J. L. 409; *Clark* v. *Wilson*, 103 Mass. 219; *Hayward* v. *Cain*, 105 Mass. 213; *Perrott* v. *Shearer*, 17 Mich. 47; *Peoria, etc. Ins. Co.* v. *Frost*, 37 Ill. 333; *Conn., etc. Ins. Co.* v. *N. Y., etc. R. R. Co.*, 25 Conn. 265; *Rockingham, etc. Ins. Co.* v. *Bosher*, 39 Me. 253; *Carpenter* v. *Eastern Transp. Co.*, 71 N. Y. 574; *Lake Erie, etc. Co.* v. *Falk*, 61 Ohio St. 312.

While some authorities hold that in actions of this nature interest is not recoverable as interest *eo nomine*, it seems to be well

established that the jury may allow and include interest in their verdict as damages.  *Parrot* v. *Knickerbocker, etc. Ice Co.,* 46 N. Y. 369; *Tremont, etc. R. R. Co.* v. *Marley,* 25 Neb. 138; *Kendrick* v. *Towle,* 60 Mich. 363.

HASELTON, J.    This was an action brought by the plaintiff, a corporation, to recover damages for the destruction by fire of a grist-mill and outbuildings and of grain stored therein.    Trial by jury was had.    Verdict and judgment were for the plaintiff. The fire in question, which occurred May 12, 1905, was alleged to have been communicated by a locomotive engine on the Connecticut & Passumpsic Rivers Railroad, which, on the date named, was operated by the defendant as lessee.    The statute which governs is now P. S. 4510, which reads as follows:    ''A person or corporation owning or operating a railroad shall be responsible in damages for a building or other property injured by fire communicated by a locomotive engine on such road, unless due caution and diligence are used and suitable expedients employed to prevent such injury.    Said person or corporation shall have an insurable interest in the property along its route, and may procure insurance thereon.''

Under the statute the burden was on the plaintiff to show by a fair balance of proof that the fire was ''communicated'' by one of the defendant's engines, and if that fact was established, the plaintiff was entitled to recover unless the defendant showed affirmatively by the same measure of proof that it used ''due caution and diligence'' and employed ''suitable expedients'' to prevent the injury.    *Cleaveland* v. *Grand Trunk Ry. Co.,* 42 Vt. 449; *Farrington* v. *Rutland R. Co.,* 72 Vt. 24, 47 Atl. 171.

The first exception presented by the bill of exceptions, as drawn, was taken to the action of the court in overruling a motion for a directed verdict made by the defendant at the close of the evidence.    This motion was based on eight grounds.    The fire was first seen on the roof of an old blacksmith shop owned by the plaintiff standing on the easterly side of the railroad track and, to about one-third of its extent, on the right of way of the railroad.

Under the motion for a verdict the claim, or claims, dependent upon the location of the blacksmith shop will first be considered.    The third ground of the motion was as follows:

"Because the plaintiff maintained the blacksmith shop partly upon the defendant's right of way, or road bed, as a trespasser, and the fire started on the part of said shop which was upon the said right of way without right." The fourth ground of the motion was this: "Because the plaintiff was negligent in maintaining the blacksmith shop upon the defendant's right of way without right, in the condition in which the shop then was, and such negligence contributed to the destruction sued for."

It appeared that the blacksmith shop stood to about one-third of its extent on the easterly side of the defendant's right of way, and, as to the rest, on land of the plaintiff; that it had not been in use as a blacksmith shop for about fifteen years; that during that time it had not been repaired, and that it was covered with old and short shingles. From the printed case we quote as follows: "There was no evidence in the case tending to show any contract or lease from either the Connecticut & Passumpsic Rivers Railroad Company or the defendant authorizing this building to be located where and as it was located unless the fact of its actual existence and location as herein stated is such evidence; but the evidence tended to show that it had stood upon the same location for more than thirty years." There was no evidence that the defendant, or its lessor, ever objected to the location and maintenance of the shop. This evidence tended to show that the blacksmith shop was maintained where it was by permission, or under an implied license, and that so it was rightfully there, since the granting of such license is not *ultra vires. Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454, 23 L. Ed. 356; *Kansas City, etc.* v. *Chamberlain,* 61 Kan. 859, 60 Pac. 15; *Sherman* v. *Maine Central, etc. R. Co.,* 86 Me. 422, 30 Atl. 69; *Ingersoll* v. *Stockbridge, etc. R. Co.,* 8 Allen 438; *Laird* v. *Railroad Co.,* 62 N. H. 254, 13 Am. St. Rep. 564; *Kansas, etc. R. Co.* v. *Blaker,* 68 Kan. 244, 64 L. R. A. 81, 1 Ann. Cas. 883, 75 Pac. 71; *Osgood* v. *Central Vermont Ry. Co.,* 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930.

If, as the jury were warranted in finding, the blacksmith shop was rightfully where it was, the liability of the company was not affected by its location, since the company did not contract against liability because of it, though it might have done so. *Osgood* v. *Central Vermont Ry. Co.,* 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930; *Hartford Ins. Co.* v. *Chicago, etc. Ry. Co.,* 175 U.

S. 91, 44 L. Ed. 84, 20 Sup. Ct. 33; *Greenwich Ins. Co.* v. *Louis-ville, etc. R. Co.,* 112 Ky. 598, 66 S. W. 411, 67 S. W. 16, 23 Ky. Law Rep. 477, 56 L. R. A. 477, 99 Am. St. Rep. 313.

The fourth ground of the motion for a verdict asserts the claim that the plaintiff was negligent in maintaining the black-smith shop in the condition in which it was, and that such neg-ligence was contributory and prevents recovery. There was evi-dence tending to show that fire was communicated to the shop from one of the defendant's locomotives, and the state of the evi-dence was such that it was for the jury to say whether or not the defendant had sustained the burden of showing the use of due caution and diligence and the employment of suitable expedients; and under our statute the question of whether the plaintiff was guilty of contributory negligence in maintaining the shop in the condition in which it was does not arise. We do not say whether or not a property owner may be guilty of such proximate con-tributory negligence in respect to the very communication of the initial fire as to prevent his recovery. Very clearly he cannot recover if he can be taken to have exposed his property for the purpose of having it burned. Exposure of property for the pur-pose of having it burned and getting compensation for it from a railroad is something different from negligence. It is an attempt at fraud which no court will allow to succeed.

In respect to liability for property destroyed by fire com-municated by railroad engines, the bearing of negligence, both on the part of a railroad company and on the part of the owner of property adjoining its right of way, depends largely though not wholly upon statutory provisions. In some states the sit-uation of the property owner is better and in others worse than in this state. Our statute fairly interpreted in the light of com-mon law principles lays down a reasonable rule of liability in-termediate between the extreme doctrines. A railroad company is not liable if it is not in fault. If it is in fault the right of one whose property is burned to recover does not depend upon whether in respect to guarding his property from fire he has ex-ercised the care and prudence of a prudent man. One man rakes his meadows clean, and another, not careful in raking after, leaves wisps of hay which become dry and combustible. One keeps his roofs newly and tightly shingled, and another lets his roofs get into the condition in which the roof of this old black-

smith shop was.  One locates his buildings close to the right of way of the railroad company, and another more prudent avoids such location.    The lawful maintenance and use of property, though injudicious or imprudent, does not in itself constitute, in legal sense, proximate contributory negligence.

The property owner is not bound to anticipate negligence on the part of a railroad company and guard against it, and he may use and exercise his property in any lawful way, taking upon himself the risk of loss without fault on the part of the railroad company.    This holding does not preclude the idea that a property owner may be guilty of immediate and proximate negligence in respect to the very communication of the initial fire, and that such negligence may defeat recovery.    As to that proposition our holding determines nothing.    For their bearing upon the ruling here made cases are referred to, though they are not all in accord on other points.    *Patton* v. *St. Louis, etc. R. Co.,* 87 Mo. 117, 56 Am. Rep. 446; *Salmon* v. *Railway Co.,* 38 N. J. Law 5, 20 Am. Rep. 356; *Philadelphia, etc. Ry. Co.* v. *Hendrickson,* 80 Pa. St. 182, 21 Am. Rep. 97; *Kendrick* v. *Towle,* 60 Mich. 363, 27 N. W. 567, 1 Am. St. Rep. 526; *Railway Co.* v. *Jones,* 86 Ind. 496, 44 Am. Rep. 334; *Louisville, etc. R. Co.* v. *Marlbury Lumber Co.,* 125 Ala. 239, 28 So. 438, 50 L. R. A. 620; *Southern Ry. Co.* v. *Darwin,* 47 So. 317, (Ala.) ; *Louisville, etc. R. Co.* v. *Beelor,* 31 Ky. Law Rep. 750, 103 S. W. 300, 11 L. R. A. (N. S.) 935.

Thus far in considering the defendant's motion for a verdict we have taken notice only of questions relating to the starting of the fire on the blacksmith shop.  For the burning of that the plaintiff claims no damages and introduced no evidence tending to show that it was damaged thereby.  It was conceded by the plaintiff that if it had not been burned up it would have been torn down.  With regard to that the court charged: ''I do not understand that the plaintiff claims damages for the loss of the blacksmith shop.  The evidence would not warrant you in finding any value so far as the shop was concerned, and the court charges you not to consider that, if you arrive at the question of damages.''  No exception was taken to this part of the charge and the record shows clearly enough that it was in accord with the theory upon which the case was tried.

In view of what the record shows as to the course of the trial the fifth, sixth and seventh grounds of the defendant's motion for

a verdict are for consideration. They are as follows: "Fifth: Because the plaintiff was negligent in the care of the fire after it was discovered, and such negligence caused the destruction of all the property claimed to be of any value. Sixth: Because the plaintiff did not exercise ordinary care to extinguish the fire after it was discovered, which lack of care caused the destruction of all the property destroyed which is claimed to be of any value. Seventh: Because after the fire was discovered and before it had done any damage it was fully under control, and plaintiff neglected and omitted to use ordinary care to prevent its starting up again or to prevent its spreading."

After this fire was so far overcome that, as some of the evidence tended to show, it was thought to have been put out, it started up again and the wind, which had been blowing towards the east, changed its course and blew strongly towards the west carrying fire to a shed on the west side of the track, and thence to a stock house and factory of the Cushman & Rankin Company, and thence to the grist-mill and outbuildings of the plaintiff above referred to. The plaintiff's evidence tended to show that the fire on the roof of the blacksmith shop was communicated to it from one of the defendant's locomotives and, all questions of negligence on the part of both parties and of intervening causes being for the time left out of consideration, the entire conflagration stands as an integral effect of the cause which started the fire on the roof of the blacksmith shop. *Isham* v. *Dow's Estate,* 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 Am. St. Rep. 691. The defendant quotes from *Ryan* v. *New York Central R. Co.,* 35 N. Y. 210, 91 Am. Dec. 49, and also cites *Pennsylvania R. R.* v. *Kerr,* 62 Penn. St. 353, 1 Am. Rep. 431. These cases, however, are pretty generally discredited. See with regard to them *Milwaukee, etc. Ry. Co.* v. *Kellogg,* 94 U. S. 469, 474, 24 L. Ed. 256, and what is said of them in *Isham* v. *Dow's Estate,* 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 Am. St. Rep. 691. As appears from the Isham case these cases are not followed here. We do not understand, considering the argument of the defendant as a whole, that the doctrine of these cases is relied on. The defendant's real claim in this regard, as appears from the brief in its behalf, is that there were intervening causes in view of which the fire which started the blaze on the blacksmith shop cannot be regarded as the proximate cause of the loss for which recovery is sought. The

claim is that there were two intervening causes, one, the conduct of the plaintiff in its doings and omissions in respect to the blacksmith shop after the fire had been practically subdued, and the other the change of the wind and the increase in its velocity.

The sudden change in the force and direction of the wind cannot be regarded as an intervening agency. On the question of whether or not one's conduct in setting a fire is or is not negligent the condition of the grounds and premises as to dryness or wetness, the time of starting the fire whether in the evening or morning, the condition of the air whether still or windy, and, if there is a wind, the direction in which it is blowing, may sometimes be proper matters for consideration. But when negligence in setting out a fire is established, as in the discussion of this point we are to assume it to have been here, changes in the direction and force of the wind and in other conditions may carry the result of the negligence further than it would otherwise have gone, and yet liability attach for the consequent injuries although entirely unforeseen. The distinction is clearly made in *Isham* v. *Dow's Estate*, 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 Am. St. Rep. 691, where on page 591, it is said: ''On the question of what is negligence it is material to consider what a prudent man might reasonably anticipate; but when negligence is once established that consideration is entirely immaterial on the question of how far that negligence imposes liability.'' *Gilson* v. *Canal Co.*, 65 Vt. 213, 26 Atl. 70, 36 Am. St. Rep. 802, is to the same effect. So is *Stevens* v. *Dudley*, 56 Vt. 158. Among the cases cited in *Gilson* v. *Canal Co.*, 65 Vt. 213, 26 Atl. 70, 36 Am. St. Rep. 802, is the case of *Smith* v. *London & Southwestern Ry. Co.*, L. R. 6, C. P. 14. That was a case of fire communicated from a locomotive engine. The fire broke out between the rails and a hedge, from thence spread to a stubble field beyond, and from the stubble field was carried by a high wind over a road to the plaintiff's cottage, which was burnt. The cottage was two hundred yards from the place where the fire started. Notwithstanding a concurrence of circumstances which, as the court recognized, no one could have been expected to foresee, the court held that since the fire was negligently set the railway company was liable since, after all, the injury proceeded from the original fire through the operation of natural causes. Doubtless such an extraordinary phenomenon in nature as in legal acceptation is an

Act of God would be an intervening cause. *Stevens* v. *Dudley,* 56 Vt. 158, 167. But in this latitude we know no winds which can be counted on to blow for any length of time with a force and direction practically unvaried except for some extraordinary violence of nature. Such winds as we ordinarily know, such winds as the evidence here relates to, are not intervening agents. *Milwaukee, etc. Ry. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Chicago, etc. Ry. Co.* v. *Lesh,* 158 Ind. 423, 63 N. E. 794; *Union Pac. Ry. Co.* v. *McCollum,* 2 Kan. App. 319, 43 Pac. 97; *Chicago, etc. R. Co.* v. *Williams,* 131 Ind. 30, 30 N. E. 696; *Perley* v. *Eastern R. Co.,* 98 Mass. 414, 96 Am. Dec. 645; *Florida, etc. Ry. Co.* v. *Welch,* 53 Fla. 145, 44 So. 250.

The other claimed intervening cause is the conduct of the plaintiff, through its agent and representative, in respect to the fire on the blacksmith shop and its conduct with respect thereto when that fire was under control and practically subdued. The evidence tended to show that one Dunbar, was, at the time of the fire, in charge of the property of the plaintiff corporation in that vicinity; that upon the appearance of the fire on the roof of the blacksmith shop he got notice of it, and that he and others so far subdued the fire that, as he and others present supposed, it was extinguished; that thereupon he gave directions to tear down the blacksmith shop, and that he himself went about his work, in the grist-mill, and that in pursuance of his instructions two or three men commenced to tear down the shop; that two or three pails of water were left for use in case of need, but that Mr. Dunbar left no instructions with regard to watching for fire; that after he had gone to work in the mill the wind rose rapidly and changed its direction so that it blew to the west; and that thereupon the fire on the roof started up again.

It is undoubtedly true that, when a fire has actually been started along the line of a railroad and knowledge of it has been brought home to a property owner in the vicinity, it is the duty of such property owner to exercise the care and prudence of a prudent man to protect his property from destruction, and that for any destruction of property to which his failure to exercise such duty proximately contributes he cannot recover notwithstanding a shortage of duty on the part of the railroad company. *Stebbins* v. *Central Vermont Ry. Co.,* 54 Vt. 464, 41 Am. Rep. 855; *Toledo, etc. Ry. Co.* v. *Pindar,* 53 Ill. 447, 5 Am. Rep. 57;

6

*St. Louis, etc. R. Co.* v. *League,* 80 Pac. 46, 71 Kan. 79; *Southern Ry. Co.* v. *Darwin,* 47 So. 314, (Ala.).

Since there was in this case no claim to recover on account of the burning of the blacksmith shop the defendant was entitled to have a verdict directed in its favor if proximate negligence on the part of the plaintiff in respect to the fire at the blacksmith shop contributed to the further spread of the fire. But from a review of all the evidence on this point we conclude that the circumstances, which there was testimony tending to show, were such that there was room for opposing inferences upon the part of reasonable men in respect to the matter now under consideration, and that therefore the question was for the jury.

The first, second and eighth grounds of the motion for a verdict were somewhat general and need not be recited since all the questions presented by the motion and argued by the defendant or incidental to the questions argued have been considered.    The motion for a directed verdict was properly overruled.

Since most of the questions raised by exceptions to the charge are closely related to those which have respect to the motion for a verdict we pass now to a consideration of the related parts of the charge so far as its soundness was challenged by available exceptions.    The defendant presented twenty-three requests for instructions, and its last exception was to the failure of the court to comply with each such request in so far as it was not complied with, to the omission of the court to charge upon the subject-matter of each request in so far as there was such omission, and to the charge on the subject-matter of each request in so far as it varied from the request.    This general exception reserves nothing.    It did not apprise the trial court of any claimed omission or misdirection.    *Kiley* v. *Rutland R. Co.,* 80 Vt. 536, 68 Atl. 713; *Drouin* v. *Wilson,* 80 Vt. 335, 67 Atl. 825; *Drown* v. *The New England Tel. & Tel. Co.,* 81 Vt. 371, 70 Atl. 599; *Mahoney's Admr.* v. *Rutland R. Co.,* 81 Vt. 210, 218, 69 Atl. 652; *Davis' Admrx.* v. *Rutland R. Co.,* 82 Vt. 24, 30, 71 Atl. 724.    However, specific exceptions were taken to certain portions of the charge.

In charging with reference to the caution and diligence required of the defendant in running its trains the court told the jury, among other things, to take into consideration ''the caution

and diligence required in view of the location of the tracks in close proximity with the blacksmith shop.'' Whether or not the shop was rightfully where it was, was a question for the jury, and this is the plaintiff's claim, and the plaintiff makes no claim that the court should say, as matter of law, that the blacksmith shop was rightfully maintained partly upon the defendant's right of way. But the caution and diligence required in view of the location of that shop depended very largely upon whether or not it rightfully extended onto the right of way of the defendant. And so the charge was inadequate on this point. *Boston, etc. Co.* v. *Bangor, etc. R. Co.,* 93 Me. 52, 44 Atl. 138, 47 L. R. A. 82; *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454, 23 L. Ed. 356. The defendant excepted to what the court said but we do not think that this exception, as explained to the trial court when it was taken, raised this question of inadequacy. The defendant's counsel said to the court that their idea was: ''That the blacksmith shop located as it was wouldn't charge them with any greater care or diligence than it would if it had been further away.'' The court couldn't modify the charge in accordance with this suggestion, and nothing in the exception nor in what was said when it was taken directed the attention of the court to the fact that it was for the jury to say whether or not the shop rightfully or wrongfully occupied the right of way, and to the alternative propositions of law, of which they were to apply the one or the other according as they might find the character of the occupancy to be.

In instructing the jury with respect to the duty of the defendant the court in one part of the charge told them that if they found that one of the defendant's locomotives communicated the fire to the blacksmith shop they were to inquire whether such locomotive was ''equipped with as good mechanical devices as were in known practical use, and were efficient in preventing the escape of sparks and the setting of fires along that point on the line of defendant's railroad.'' To what was said about efficiency in preventing the escape of sparks the defendant excepted. The uncontradicted evidence in this case tended to show that no engine has yet been built which can draw a train on an upgrade without emitting from its smoke-stack more or less cinders. The liability of sparks to escape from an engine equipped with as good spark arresting appliances as are in known practical use, when operated

in such manner as is consistent with the duty of the railroad company, on the one hand to transport passengers and freight with reasonable dispatch, and on the other hand to regard the safety of property along its road, is a matter which some courts treat as of such common knowledge that they take judicial notice of it.

Whether courts ought to take such notice in view of the progress of invention we do not say; but it is incontrovertible that the whole duty of a railroad company in respect to the kind of a spark arrester which it shall use is discharged when it uses "the best tested known appliances in practical use." This rule is laid down in *Farrington* v. *Rutland R. Co.*, 72 Vt. 24, 47 Atl. 171. The plaintiff's counsel in defence of the use of the word "efficient" quotes a lexicographer's definition of the synonymous and cognate word "effective" as follows: "Having the power or quality of producing effects," and say in substance that a spark arrester not capable of producing effects could not be deemed sufficient by any court. But the trouble with the use of the word "efficient" is that, as used in the charge, it naturally has reference to the power of a device to produce the specific effect of preventing the escape of sparks. As a matter of nice verbal criticism it may be said that a thing may be effective without being effectual. But this passage in the charge standing by itself was likely to be misleading. However, the passage referred to is only a part of what the court said upon the subject-matter embraced therein. Elsewhere in the instructions the court stated to the jury the rule laid down in a New York case cited with approval in the Farrington case, and this rule contains in substance the objectionable phrase. After the reference to this New York case the court stated to the jury as authoritative the doctrine of this Court as found in the Farrington case. Afterwards in its own language the court stated to the jury that if the appliances in question were as effective in preventing the escape of sparks "as any mechanical contrivance or invention in known practical use at that time they would constitute such suitable expedients as were required by the statute." Again the court said with reference to the appliances in question that the jury were to consider the opinions of the experts and their description of the various kinds of such appliances upon the question of whether the

defendant employed "just as good as any in known practical use."

At the close of the charge the correct rule was brought to the attention of the jury; for counsel for defendant called attention to the rule laid down by the court that it was the duty of the defendant to use appliances "as good" as any known practical expedient in practical use and excepted to it on the ground that it didn't limit the known expedients and practical use to such as the evidence in the case showed to exist.    Counsel expressed the view that with that limitation the rule was well enough.    Thereupon the court charged the jury further on that point and put upon the rule the limitation suggested.

Where there is a correct and an erroneous instruction upon the same point the charge may be such that the jury will be taken to have felt at liberty to follow either and then there is error. Such was the view taken of instructions in *State* v. *Fitzgerald,* 72 Vt. 142, 47 Atl. 403, in *Bovee* v. *Danville,* 53 Vt. 183, and in *Alexander* v. *Blodgett,* 44 Vt. 476.    A like view is taken of instructions in *State* v. *Tapack,* 72 Atl. 962, a very recent New Jersey case, in the decision of which *State* v. *Fitzgerald,* 72 Vt. 142, 47 Atl. 403, is cited.

But the doctrine of those cases does not apply here.    As has been seen the court in one passage used an expression which, had that passage been all that was said upon the matter which it touched, would very naturally have misled the jury.    But the other parts of the charge fully explained the objectionable passage and the sense in which the word "efficient" was used.    This is not an instance of contradictory instructions, but the common one of instructions which need to be taken together and which when so taken make the correct rule clear.    *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294, 329, 60 Atl. 74, 107 Am. St. Rep. 765; *Graves* v. *Waitsfield,* 81 Vt. 84, 95, 69 Atl. 137.

It appeared in evidence that the plaintiff had received from various insurance companies on account of its loss by the fire in question the sum of seven thousand dollars, and the names of these several companies and the amount paid by each of them also appeared.    There was no evidence tending to show that any of the policies contained a subrogation clause, nor was there evidence of any contract for the subrogation of any of the companies to the rights of the plaintiff against the defendant.    It

was conceded on trial that the suit was for the benefit of the plaintiff, and also for the benefit of these insurance companies respectively to the amount of the insurance paid by each.    In instructing the jury the court referred to this matter and said: "The fact that the plaintiff has received insurance money on the property burned is neither a complete nor a partial defence to this suit." The court further said to the jury "you have nothing to do with the matter of the adjustment between the plaintiff and the insurance companies." To the above instructions the defendant excepted.

The charge upon this point was, however, correct. That an insurance policy is a contract of indemnity, that the liability of the defendant company, if it is liable, is primary and ultimate and that of the insurance companies secondary, that the payments by the insurance companies and the acceptance of such payments by the plaintiff worked subrogation to the extent of the payments without any provision in that regard in the policies, that since our procedure is according to the course of the common law, the suit was properly brought in the name of the insured alone, that the defendant could not claim a reduction of damages on account of the payment to the plaintiff of insurance money, and that the defendant has no interest in the adjustment between the insurance companies and the plaintiff are propositions now fully established in this State. *Cushman & Rankin Co.* v. *Boston & Maine Railroad,* 82 Vt. 390, 73 Atl. 1073; *Harding* v. *Townshend,* 43 Vt. 536, 5 Am. Rep. 304.

In charging the jury upon the subject of damages the court among other things said: "Call to mind and find the fair cash value of each article of property, and of the real estate, and of all the property that was destroyed by fire." The defendant excepted to the instruction to the jury to find the fair cash value of each article of property on the ground that so far as the articles of machinery are concerned they were a part of the mill which should be valued as a whole. Thereupon the court in substance instructed the jury that the mill included the machinery and explained and modified the charge as to value so that in our opinion the point made by the exception was fully met. This seems to have been the view taken by the defendant's counsel at the time for to the charge as explained and modified no exception was taken.

Further on in the charge upon the subject of damages the court said: "If you also find by a fair balance of evidence that the plaintiff suffered further loss, you may allow such sum as has been shown by a fair balance of the evidence that plaintiff suffered in addition to the cash value of the property destroyed, not exceeding simple interest upon the amount that you shall find, from the date of the fire to the date of your verdict." And again the court instructed the jury that if they came to the question of damages under the conditions of recovery which the court had pointed out, they should render a verdict for the fair cash value of the property for the destruction of which the defendant was liable, and added: "If you find further damage by a fair balance of proof, you may allow a sum not exceeding interest from the date of the fire to the time of your verdict." The defendant excepted to what the court said in the passage just quoted as to the right of the jury to allow damages in excess of the loss. It is quite obvious that the court merely had in mind the rule in this State that in an action of tort interest as such is not allowed, but that a jury in getting at the real measure of damages to the plaintiff may consider the lapse of time from the date when the right of action accrued down to the time when they arrive at their verdict and may make an allowance, on account of delay, of a sum which shall not exceed the legal rate of interest. *Davis* v. *Bowers Granite Co.*, 75 Vt. 286, 54 Atl. 1084; *Taylor* v. *Coolidge*, 64 Vt. 506, 24 Atl. 656; *Clement* v. *Spear*, 56 Vt. 401; *Lindsey* v. *Danville*, 46 Vt. 144.

The defendant argues in substance that this portion of the charge permitted the jury to find damages, at the time of the fire, in addition to the fair cash value of the property destroyed, that had no necessary reference to the delay of payment of the loss, and that though the jury may have declined to give damages on account of such delay, they may, nevertheless, have allowed damages in excess of the loss on some other ground. But we think that the jury could not well have been led astray, but that by reference to simple interest, as limiting the amount of the additional damages which they might allow, they were apprised of the nature of such additional allowance if made.

The court charged the jury as follows: "If the plaintiff has made out by a fair balance of evidence that the fire in question was communicated to the blacksmith shop of the plaintiff by

a locomotive engine owned or operated by the defendant, and you also find that the defendant has failed to show by a fair balance of evidence that it used due caution and diligence and employed expedients, as above defined, to prevent such fire, or if you should find that the evidence upon this last named point is just even, then the plaintiff is entitled to a verdict, and you will proceed to the question of damages. In other words, if upon the issue of due caution and care and diligence and suitable expedients, you find against the defendant, or find that the evidence is just even, then you will proceed to the question of damages.'' To this portion of the charge the defendant excepted on the ground that the statement of the court was in substance ''that the plaintiff was entitled to a verdict if the plaintiff showed that the fire was started by an engine and the defendant failed to show that it used due caution and diligence and suitable expedients, without any reference to the effect, upon the right of recovery, of negligence in the care of the fire by the plaintiff.'' In taking this exception counsel for the defendant said to the court: ''Of course the court covered that fully later,'' and then added ''possibly the latter part covers it.'' Whether or not these remarks deprived the defendant of the benefit of the exception it is not necessary to inquire, since substantially the same question was raised by another exception which will now be stated and considered. To a later part of the charge which was sufficiently pointed out the defendant excepted on the ground that the effect of it was ''that if in the care of the fire after the plaintiff learned of it they didn't exercise proper care, the plaintiff would be entitled to recover even if the defendant had not exercised proper care.'' The part of the charge referred to was this: ''If there was lack of care and prudence, as explained to you, on the part of the plaintiff or its agent in charge, plaintiff would be entitled to all the damage that was the natural and probable result of defendant's negligence. If there was no lack of care and prudence, as explained to you, on the part of the plaintiff or its agent in charge, plaintiff would be entitled to all the damage that was the natural and probable result of defendant's negligence.'' This was said, as the context shows, with reference to the exercise of care and prudence after the discovery of the fire on the blacksmith shop. Standing by itself the passage of the charge last quoted permitted the same result to follow whether the plaintiff

was negligent in the care of the fire or not.    The court further instructed the jury, in substance, that if the plaintiff failed to exercise the care and prudence of a prudent man in endeavors to prevent the spread of the fire after discovering it such failure would be contributory negligence and would prevent the recovery of damages for loss sustained after such negligence in the care of the fire intervened, that the negligence of the plaintiff or its agent in charge of the property would prevent the recovery of any damages of which such negligence was the proximate cause, and that recovery must be limited to such of the plaintiff's property, if any, as was destroyed or injured in consequence of the defendant's negligence and without fault or lack of care and prudence upon the part of the plaintiff.    And the court quoted as the law a portion of the headnote to a Vermont case, already cited, as follows: ''Damage caused by fire through the negligence of one party, but increased through the negligence of the party suffering loss, may be recovered up to the time when the contributory negligence began to affect the result.''    But all this was said not upon the question of liability but upon the question of damage, and after the court had said that if the jury found that the fire was communicated to the blacksmith shop by an engine of the defendant, and further found against the defendant upon the issue of the exercise of due care and the use of suitable expedients on its part, then the jury were to proceed to the question of damages.

The question of negligence on the part of the plaintiff after the fire started on the blacksmith shop related solely to what the plaintiff did or omitted to do before the fire had been carried any further than the shop, and so before anything had been burned for the destruction of which the plaintiff claimed to recover; and as has been said in discussing the motion for a directed verdict the question of whether or not there was negligence on the part of the plaintiff, in respect to the fire at the blacksmith shop, was a question for the jury, and if the jury found that there was such negligence there was in this case no question of damages for the jury.

The portion of the charge excepted to by the exception last noted made the question of the plaintiff's negligence after the fire started on the blacksmith shop immaterial on the question of liability, and as all that was said in modification of it was said in

discussing the measure of damages, we do not think it can be said that the error was cured.

The remaining specific exceptions to the charge relate to the submission of certain evidence to the jury, and these exceptions can be best considered in connection with the exceptions taken to the admission or exclusion of evidence.    And these latter exceptions we now consider.

During the cross-examination of one Hanson, a witness called by the defendant, the court put a question to which the defendant excepted.    The court ruled that the witness might answer and to this ruling the defendant excepted.    The witness answered, and then began an explanation.    The court did not permit him to make his explanation then, but told the defendant's counsel that they might have him explain fully on redirect examination.    The defendant took an exception to the action of the court in stopping the witness as it did.    On redirect examination the explanation was given.    It is not now claimed that the court's question was an improper one, but it is claimed that there was error in not letting the witness make his explanation in connection with his answer.    Since however, the defendant objected to the question of the court and had an exception to it, it was a proper course for the court to content itself with the answer and to leave the bringing out the explanation to counsel, who might be supposed to know the nature of it.

It appeared that the fire was first seen on the blacksmith shop a little past noon of May 12, 1905, and it was agreed that trains of the defendant passed that place on the day in question as follows:—A passenger train going north, at eleven o'clock and six minutes in the forenoon, a passenger train going south, at eleven o'clock and forty-five minutes in the forenoon, a freight train going north, at six minutes past noon, and another freight train going north, at thirty-eight minutes past noon.    No fire or indications of fire were seen by any witness on or near the blacksmith shop before the train went by which passed at six minutes past noon, but no witness testified that there was no fire there before that time.    The uncontradicted evidence was that the fire was burning upon the roof of the shop before the train passed that went by at thirty-eight minutes past twelve. The evidence, therefore, rather strongly pointed to the engine which drew the train going by at six minutes past twelve, which

was engine 326, as the one that communicated the fire, if it was communicated by any engine. Nevertheless one train had passed twenty-one minutes earlier, and another an hour earlier, and it cannot be said that the evidence conclusively established the fact that engine 326 was the only one which could have communicated the fire. Here we quote from the printed case as follows: "The plaintiff offered to show other fires near the railroad track shortly after a train passed and before the day of the fire involved in this suit. The defendant objected upon the ground that it was wholly immaterial; that it appeared what trains passed shortly before the fire in controversy, and defendant offered just before and during the trial to designate the engines on those trains, if the plaintiff wished the information, and defendant then and there offered to give the plaintiff the number of the engines on the various trains that it was agreed passed shortly before the fire in controversy." The court overruled the objection, and subject to objection and exception admitted the evidence of several witnesses whose testimony, taken together, tended to show that a week or two before the fire in question one of the defendant's engines passed the blacksmith shop, working hard, and that after it had passed, and that within not more than half an hour, fire was discovered on the roof of the same blacksmith shop already so much referred to.

One of the witnesses testified that he did not see the engine throwing sparks, but one of the witnesses, whose testimony obviously related to the same occasion, testified that it was throwing sparks when it passed him very shortly before it reached the blacksmith shop. Two of the witnesses testified to the effect that there was no apparent cause of the fire unless it was caused by the engine. No one testified to seeing sparks or cinders fall upon the shop upon this occasion or to seeing the engine emit sparks as it was passing the shop itself. Subject to the like objection and exception one witness testified that near the time when the property in question was burned up he saw a freight train passing this property emitting sparks, and that within fifteen or twenty minutes or half an hour after the train passed, fire, which his wife put out, was discovered within eight or ten feet of the track. The witness first placed this occurrence a week or two before the fire, but later said it was a week or ten days afterwards. Subject to the like objection and exception

the plaintiff took the testimony of witnesses to the effect that, during a time before and after the destruction of the property in question, engines of the defendant emitted sparks while passing along in the immediate vicinity of the property burned. Such testimony was so confined by the court that none of it related to a time more than six months before or six months after the fire in question. Witnesses testified as to the frequency with which sparks were emitted during the time to which this evidence related, and as to their size and shape, and as to how far they carried.

The defendant urges the application of the rule that when a particular engine is shown to have caused a fire the evidence should be such only as relates to that engine. But this rule, of the general soundness of which we say nothing, could not be applied here. It was not conceded that sparks from any engine started the fire, and the evidence as to the trains that passed shortly before the fire was as has been stated.

The question of remoteness, as dependent on the nearness in time to the injury complained of the other fires and the discharge of sparks testified to, was peculiarly for the trial court and the time fixed by the court had reference to a time within which, as the plaintiff's evidence first introduced tended to show, the inspection of the defendant's engines was the same as it was at the time of the fire. This fact indicated a reasonable exercise of discretion in respect to the time which the testimony of witnesses was permitted to cover. The evidence under consideration, including that which relates to times after the fire, was admissible. *Smith* v. *Central Vermont Ry. Co.*, 80 Vt. 209, 67 Atl. 535; *Hoskinson* v. *Central Vermont Ry. Co.*, 66 Vt. 618, 30 Atl. 24.

The witnesses who testified that on the occasion of the fire shortly before the injury in question they saw nothing which could have caused the fire unless it was caused by a locomotive, testified to such opportunities for observation as made this evidence admissible. In *McGovern* v. *Hays*, 75 Vt. 104, 53 Atl. 326, it was held proper for an engineer, who had told what he did to stop a train, to say that he did not know of anything more that he could have done to stop the train. This holding is much in point here.

In connection with this testimony about sparks, cinders and fires the plaintiff called as a witness one Roy Ayer, whose residence was more than two hundred sixty-two feet from the railroad track. He was asked what he had observed during the six months before the fire with reference to cinders coming over into his door yard where his wife hung out clothes. Under objection and exception he was allowed to answer, whereupon he said that he had never noticed anything in particular about the cinders but that he had known his wife to take in clothes and rinse them over for the cinders. In answer to an inquiry put to him by the court the witness admitted that of his own knowledge he didn't know anything about what he had related, whereupon the court said: "Strike that out, strike out what he said about his wife's bringing in the clothes to rinse them on account of cinders." In an effort to show some knowledge on the part of the witness, counsel for the plaintiff then asked him if he ever saw the clothes, but he said "No," that he had heard his wife speak of them. The original question which brought out the hearsay evidence was a proper one and the only exception taken was to the allowance of that. One of the witnesses who testified on the subject of sparks before and after the fire was Lizzie Ayer, wife of Roy. She testified to seeing sparks and cinders occasionally emitted from engines going north, both before and after the fire and within the time limited by the court, to sweeping cinders out of her door yard and to the size and shape of some such cinders. She then testified to seeing black spots on clothes that she had hung out which she took into the house and rinsed over. She was asked what caused those black spots and answered: "I suppose they were from the engine." At this point the court said: "Don't answer what you suppose. Do you know anything about cinders getting onto those clothes?" She answered that they came from the train. Upon further inquiries being put it appeared that the witness was giving her opinion merely, and that she never noticed any cinders under the clothes reel. The objections and exceptions under which this evidence was taken did not touch the matter of her suppositions. In regard to the testimony of Roy Ayer and his wife Lizzie there was no erroneous ruling by the court and when they deviated, the one into hearsay and the other into conjecture,

they and their testimony were adequately dealt with and no error intervened.

The defendant excepted to the submission to the jury of the evidence with regard to the cinders and sparks emitted by engines within six months of the date of the fire or at any time before or after that date, and to the submission to the jury of the evidence of the fire that caught on the blacksmith shop a week or two before the destruction of the plaintiff's property, and also to the submission to the jury of the evidence of the fire that caught near the track as hereinbefore referred to. But since the evidence was properly in the case it was proper to submit it to the jury along with the other evidence. If these exceptions raise the question of whether the evidence was properly submitted, then we hold that it was, for it appears that it was submitted as circumstantial evidence bearing upon the question of whether or not the fire in question was communicated by an engine. The defendant also excepted to the way in which the matter of the two other fires was submitted to the jury claiming, in one exception, that the evidence of those fires was submitted as indicating negligence on the part of the defendant, and in another exception, that the charge with reference thereto was faulty "because there was no suggestion that the mere fact that fire was communicated was not necessarily evidence of want of repair." But an examination of the charge to the jury does not sustain either of these claims. The court took up first the question of whether the fire was communicated by a locomotive engine operated by the defendant, and it was in the submission of that question, and of no other, that are found the passages of the charge to which these last exceptions relate. In the course of the discussion of this point the court several times called the attention of the jury to the precise nature of the question then under consideration and the court made clear the line of demarcation between that question and the one which it next took up.

The plaintiff called as a witness Charles Ayer, foreman boiler-maker in the employ of the defendant. He testified without objection that he had to do with the repairing of smoke boxes and cinder sieves when the defendant's engines were washed out and overhauled, and as to the frequency with which spark arresters were looked over, down to May 12, 1905, the date

of the fire.    Under objection and exception he testified further
to the effect that the inspections went on in the same way down
to January 1, 1906.    The court did not permit his testimony to
cover a later time.    The testimony was properly received.    It
contributed to aid the court in determining the period to which
evidence as to the sparks and cinders might properly be ex-
tended.

Charles Chapman, a foreman of the defendant at its round
house in Lyndonville, was called as a witness by the plaintiff in
its opening case.    Him the defendant examined as to his duties
in regard to inspecting engines and the appliances for prevent-
ing the escape of sparks and the frequency with which he made
and was required to make inspection, and as to the character of
the inspection that he made.    By him the defendant in cross-
examination showed that there was a rule of the company in
force as to the inspection of the appliances for arresting sparks,
and, having produced the rule and identified it by the witness,
the defendant's counsel offered it in evidence as showing one
element of the care and diligence required of the defendant.
The plaintiff's counsel objected, though not because the offer
was out of time, and the rule was excluded.    It appears, how-
ever, that later when the defendant was putting in its case this
rule was offered and received without objection, and so no ques-
tion as to it is fairly in the case.    The question has, indeed,
been raised whether the transcript is so referred to in the bill of
exceptions as to permit notice to be taken of the final introduc-
tion of the rule.    The main bill of exceptions refers to the tran-
script upon the motion for a verdict, and upon the questions
raised by exceptions to the charge, and does not distinctly refer
to it upon other questions.    But there is an amendment to the
bill that may fairly enough be considered as making a general
reference to the transcript.

The witness, Charles Chapman, subject to objection and
exception on the part of the defendant, was allowed to testify as
to the number of men employed by the defendant at Lyndonville.
He said that there were one hundred and fifty in all departments
there.    This evidence was received upon the question of whether
the defendant after being charged with notice of the fire, used
due diligence to prevent it from spreading, a question put in
issue by the pleadings.    The defendant's evidence tended to

show that the train dispatcher at Lyndonville, about two miles and a half from the fire, was notified at one o'clock and seventeen minutes by Mr. Cushman, the general manager of the Cushman & Rankin Company, that the blacksmith shop· was on fire, and was asked to send the section men; that they were immediately sent; that between half past one o'clock and thirty-five minutes, and just as the section men, six or eight in number, were starting, Mr. Cushman telephoned ''send help here at once,'' and was told that the section men had just left. That at one o'clock and forty-seven minutes Mr. Cushman telephoned: ''This old blacksmith shop is about burned down. I thought I would tell you because I didn't know but you would be sending more help than was necessary on account of what I said last;'' that the train dispatcher then asked Mr. Cushman if seven or eight men had arrived on a hand car, and asked if he thought seven or eight men would be sufficient, and that Mr. Cushman said he thought so; that four or five minutes later, that is eight or nine minutes before two o'clock, Mr. Cushman telephoned the railroad office at Lyndonville: ''The fire has crossed the track, send all the help you can or we will all be burned out''; that thereupon, as soon as could be, eighteen or twenty more men were sent by train from the Lyndonville shops to the place of the fire; that when these men reached the fire it was burning fiercely on the west side of the railroad track and was beyond control.

The plaintiff's evidence tended to show that Mr. Cushman's first notice, which was by telephone, was that the blacksmith shop was on fire, and that he asked for all the men that could be sent; that from three to five minutes later he telephoned: ''The wind is still holding south blowing the fire away from the mill; perhaps a few men would be sufficient.'' That in less than three to five minutes from that time he telephoned that the wind had changed and asked for all the men that could be sent, and that it was then fifteen or twenty minutes before the mill caught fire. It appeared from the defendant's evidence that a train could be run from Lyndonville to the place of the fire in about four minutes; that with the exception of the section men who went on the hand car no men were sent from the shops until the regular afternoon express which left Lyndonville at twelve minutes past two, it being held for the men from the shops to get aboard. It will be seen from this reference to the testimony

that the defendant's evidence and that of the plaintiff differed on the material point of the time when the call for all the men that could be sent was made. If the call was made when the plaintiff's evidence tended to show it was, there was some evidence tending to show negligence on the part of the defendant in not getting men to the fire sooner than it did and more of them. In view of the conflict of evidence there was a question here for the jury and the evidence of the witness, Chapman, as to the number of men in the defendant's employ at Lyndonville was a circumstance which unexplained was to be considered. The argument of the defendant upon this question proceeds upon the ground that the defendant's evidence in relation thereto was to be treated as controlling. The defendant excepted to what the court said in the charge as to the duty of the company to send men to the fire, and to the submission to the jury of the question of whether or not the defendant exercised due diligence in that respect. It was proper to submit the question to the jury and the exception to what the court said does not upon examination appear to be well taken. It is claimed in argument that the charge did not point out and explain what the duty of the defendant was in respect to sending men to the fire. While the question of any omission of the court to charge on this point is not raised by the exceptions, in view of the necessity of a new trial on other grounds, we take occasion to say that the jury were to consider the duty of the defendant in respect to this fire, with reference to other duties, such as the operation of its telephone office and telegraph office and its switches at Lyndonville, the neglect of which might have resulted in disaster immeasurably greater than the destruction of the plaintiff's mill property, and also with reference to the defendant's control of the men in its employ. These things a jury might fail to consider unless their attention was expressly called to them.

D. A. Smith, the master mechanic of one division of the defendant railroad, was a witness in behalf of the defendant and testified as to the construction of its engines and as to its use, as a spark arrester, of a perforated steel plate. On cross-examination the plaintiff's counsel showed him some objects, and under objection and exception the plaintiff was permitted to inquire if they were cinders coming from a locomotive. He testified that they were cinders but that they did not resemble cinders

7

from a locomotive. These objects were put in an envelope and are referred to as exhibit "B." A perforated plate of the kind used by the defendant as a spark arrester, and a wire netting device in use on some other road than the defendant's were in evidence and, under objection and exception, the jury in the presence of the court were permitted to make experiments with these cinders and the spark arresting appliances to see through which of the two the larger object would go. The objection made was that these cinders were submitted to the jury without any evidence as to where they came from or as to what they in fact were. The court permitted the jury to use the cinders simply as so many objects for the purpose of comparing the relative sizes of the holes in the spark arresting devices. As the experiment proceeded the defendant had the benefit of the further ground of objection and exception that the experiment was not a fair one, since it could not show how the devices would operate in their proper place in locomotives in connection with the general construction of things there. At the conclusion of the experiments the cinders were offered and received in evidence subject to objection and exception on the part of the defendant. Both spark arresting devices were already in evidence and so were properly shown to the jury, and they could see, without the experiments, the comparative size and shape of the holes, but the use of these objects may have enabled them to determine their size and shape with a little more accuracy, and we think it was within the discretion of the trial court to permit the experiments and admit the cinders although the evidence was that the spark arresting devices, when put in an engine are set at an angle, so that the size and shape of the apertures were factors merely in the relative efficiency of the devices in question.

In the cross-examination of the master mechanic with regard to the cinders no inadmissible testimony was elicited.

The plaintiff in its rebuttal called as a witness one Hoyt who produced a box of what he denominated cinders. As to them his evidence was that he found some of them "over in the cellar of this old blacksmith shop and some in the road towards the mill around the scales there and up towards the Cushman & Rankin Mill there." These cinders called exhibit "C" were offered in evidence by the plaintiff and were objected to by the defendant on the ground that there was no testimony that they

came out of a locomotive stack or from a locomotive engine in any way. Thereupon under objection and exception the witness testified that these cinders called exhibit "C" resembled cinders that he had seen coming from an engine in that vicinity. In view of the questions and answers, which it would take unnecessary time to recite, it is clear that his comparison was with cinders which he had seen come from locomotive engines. The witness testified to five years' familiarity with cinders that he had seen come from engines, and then, under objection and exception, was permitted to testify that in his opinion the cinders called exhibit "C" and those called exhibit "B" came from a locomotive engine. These cinders were received in evidence. The court charged the jury as to the consideration which they might give to the cinders called "B" in connection with the experiments in which they were used. To the charge in this respect the defendant excepted. But the court so cautioned the jury as to the evidence which must be considered in connection with the experiments that the charge upon this point was unexceptionable. Thereafter the court referred to the evidence tending to show that the cinders "B" and "C" came from an engine on the defendant's road near the place where the fire was, and said: "If you find that they did come from an engine in use by the defendant at or near the place where the fire occurred and are like those described by defendant's witnesses, you will consider them in connection with defendant's evidence as to the size of sparks or cinders that will come from such an engine. If you are not satisfied that they did come from one of defendant's engines, by a fair balance of evidence, you will not consider them for such purpose." To this portion of the charge the defendant excepted. The submission of these cinders to the jury as they were submitted in the portion of the charge just quoted, and their admission with the like view, was to place before the jury for consideration cinders emitted from the defendant's engines, without any reference to the period of six months before and six months after the fire to which the early rulings of the court had confined such evidence.

But it appears from the transcript that after the cinders "B" had been used in the experiments and admitted in connection with their experimental use only, a witness for the defendant had brought into court cinders picked up by him during the trial

along near the place of the fire, and that they had been admitted without objection as samples of the cinders thrown out by the defendant's engines.

Under these circumstances we think that the cinders collected by the witness, Hoyt, were properly received in rebuttal, and were properly submitted to the jury on the second ground of their submission as well as on the first. *Perry* v. *Vermont Machine Co.,* 70 Vt. 276, 40 Atl. 731; *Perry* v. *Moore,* 66 Vt. 519, 29 Atl. 806; *Stevenson* v. *Gunning's Estate,* 64 Vt. 601, 25 Atl. 697; *Hogan* v. *Northfield,* 56 Vt. 721; *Lytle* v. *Bond's Estate,* 40 Vt. 618.

E. T. Ide, plaintiff's president and general manager, testified that at Lyndon, where the mill that was burned was situated, the railroad facilities and the water power combined to make the location very nearly ideal, and that so the mill was rendered of great value. On the cross-examination of the witness it appeared that the plaintiff had rebuilt, not at Lyndon, but at St. Johnsbury, where there was no water power, and that the mill was run by electric power. The reason given for the change was that the new location was more convenient to the plaintiff's main business and had superior railroad facilities. On re-direct examination the witness was allowed, subject to objection and exception by the defendant, to give an additional reason for the change in location, and said: "I did not think it could be rebuilt at the present time, or at that time, for a cash value that I could obtain for it if I wanted to sell it." The defendant having on cross-examination inquired about the reasons for not rebuilding at Lyndon, it was proper on re-direct examination to bring out this additional reason. In receiving the testimony as to this additional reason the court held, and told the jury to bear in mind, that this testimony had nothing to do with the cash value of the mill destroyed, but only with the reasons why the mill was not rebuilt at Lyndon. No exception was taken to this holding and instruction. The indirect bearing of the evidence was to sustain, so far as it might, the testimony as to value given by the witness, in the respect in which cross-examination had weakened it. Its effect in that direction could not have been great, for, if a mill built at Lyndon wouldn't be worth what it would cost to build it, it would seem that the ideal character of the location could not greatly have enhanced

the value of the mill there.   There was no error in permitting the re-direct examination referred to.

Some of the testimony of the witnesses as to the availability of water power, as affecting the value of the mill, was taken subject to objection and exception; but the evidence upon that point was obviously admissible.

It having appeared that shortly before the fire extensive repairs had been made on the mill, Mr. Ide was allowed, subject to objection and exception, to testify to the occasion for making the repairs.   He said they were made to transform the mill from a custom mill and a flour mill into a corn grinding mill for merchant work and car load business, but that they did some custom work.   In this there was no error.   He further testified as to the value of the remodeled mill, in view of its capacity for doing custom business, and in view of the local trade and the neighborhood contributory to that mill.   This testimony was received under objection and exception on the ground that the witness had testified that the mill had been transformed from a custom mill into a merchant mill, and that so the local patronage of a custom mill could have no effect upon this mill as made over.   But the witness had already testified that the mill when made over did some custom work, and in giving his testimony on this last point Mr. Ide testified that the mill as remodeled was capable of doing a very large custom business and that it was arranged for such business in connection with the other business for which it was adapted.   In view of this testimony, the only objection made was without force, and in overruling it there was no error.

The testimony as to the value of the mill destroyed went on at great length, and considerable of it was very close to the border line of relevancy.   George P. Ide, former owner of the mill, who had been familiar with it for more than thirty years, after having testified fully in regard to the construction and condition of the mill at the time he sold it to the plaintiff corporation, which was very shortly before the fire, referred to huskwork, of which he gave an explanation of some length, and which from his explanation appeared to be a part of the mill itself.   He was asked for the fair cash value of that in the spring of the fire; and the defendant objected on the ground that this huskwork was a part of the structure of the mill which

should be valued as a whole. Plaintiff's counsel pressed the question and the court permitted it to be put under objection and exception. The witness said: "There were five of those there. Do you want the cost of them or what they are worth at the present time?" The questioner said: "Want what they were worth in the spring of 1905." The witness replied: "Well they would be worth to make about six dollars apiece." This the court ordered to be struck out, and the witness then answered the question by saying that they were worth six dollars apiece. Since this case must be re-tried we cannot pass over this evidence as too trifling to notice. It was improper and should have been excluded. If the witness might properly value these husks separately, he might with equal propriety have been allowed to put a separate valuation upon each board, sill and rafter in the entire building. It was proper for the witness to show his familiarity with the structure, but for him to appraise each minute part of the structure was a very different matter.

Mr. Dunbar, a witness before referred to, was the miller of the plaintiff. He testified fully to the condition that the mill property was in and the nature and extent of the repairs that had been made thereon and that he had been a miller a great many years and had helped set up machinery and had known something of the sales of different mills, what they had been sold for, as the parties purchasing had told him. Thereupon he was allowed, subject to objection and exception, to testify as to the fair cash value of the buildings and machinery at the time of the fire. The objection made was that no foundation had been laid by way of qualification. But we think that the court was amply warranted in ruling, as it tacitly did, that the witness was qualified to testify on the subject of value. His estimate of value was by way of a lump sum and in that respect was unobjectionable.

The plaintiff called as a witness Alfred L. Bragg, a contractor and builder of thirty-eight years' experience residing in St. Johnsbury, and showed that he had worked at his business in Caledonia County and knew something of the value of real estate and of buildings there and that he had seen the mill and store house that were burned and that he had been in the lower part of the mill, but that he knew nothing of the value of grist

mill machinery. Thereupon the plaintiff put to him a hypo-
thetical question which assumed various things with respect to
the size, construction and condition of the grist mill and of the
store house as they stood just before the fire, and called for an
answer as to the fair cash value of those buildings exclusive of
any machinery. The question was answered under objection
and exception on various grounds. In cross-examination the·
witness was asked for the size at which he had figured the store
house in his estimate. He said he didn't remember, that the
dimensions were furnished by others than the examiner, but
that as the question was put he remembered that the dimensions
were the same as those which had been before given him by
others. He said that he remembered that one dimension of the
store house was forty-two feet. That dimension, however, was
not assumed in the question. He stated further that he figured
forty thousand feet of pole timber in the building, but the as-
sumed data were not enough to enable him or any one to deduce
that result. He was unable to tell how he deduced his results
without reference to figures not contained in the hypothetical
question. After some further cross-examination it became suf-
ficiently apparent that the answer of the witness was not wholly
based on the hypothetical question, and at the conclusion of the
cross-examination on this matter the defendant moved that the
estimate of value made by the witness in answer to the hypo-
thetical question be struck out. The motion was overruled and
the defendant excepted. We hold that the motion of the de-
fendant should have been complied with, the answer struck out
and the jury told to disregard it.

In an amendment to the bill of exceptions the presiding
judge made an order that the copy of the reporter's transcript
of the case, which the bill directed the defendant to furnish the
court, should be filed by the defendant with the clerk of Cale-
donia County on or before April 24, 1909, to be kept by him for
the benefit of both parties until May 1, 1909, and then to be
forwarded to Montpelier to the clerk of the Supreme Court.
To the making of this order the defendant excepted. But ex-
ceptions lie only to rulings upon questions of law arising upon
the trial of a cause, and the question of the power of the pre-
siding judge to make the order complained of is not before us.

*Judgment reversed and cause remanded.*