GEORGE VAN DYKE *v.* GRAND TRUNK RAILWAY COMPANY.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 25, 1911.

*Reference—Effect on Pleadings—Requests—Findings—Sufficiency —Recommittal of Report—Discretion of Trial Court—Railroads—Fires Set From Locomotives—Action—Burden of Proof—P. S. 4510—Evidence—Negligence—Allegations of Declaration—Care Required of Railroad—Harmless Error —Mortgages—Rights of Mortgagee—Injury to Property— Right of Action—Contributory Negligence—Questions not Raised Below.*

In an action against a railroad company for damage to property caused by fire communicated from defendant's locomotives, where some of the counts expressly declared on defendant's liability under P. S. 4510, and others relied on liability at common law, a reference of the case "to be heard and tried according to the rules of the common law," did not prevent plaintiff's recovery under the statute.

A motion to recommit a referee's report is addressed to the discretion of the trial court, and its dispositon thereof is not reviewable; but this Court has the power, in exceptional instances and to prevent a failure of justice, to remand a case that a recommital may be ordered, regardless of whether a motion to recommit was made below.

Referees' findings that defendant's locomotives were in good condition in respect of throwing fire, and that defendant used the latest and most improved methods of screening the stacks of its locomotives to prevent throwing sparks, sufficiently answered a request to find that "no steam locomotive has ever been built that can draw a train of cars on a level, or up grade, without emitting more or less sparks and cinders."

There is no legal inference of negligence from the mere fact that sparks are emitted from a locomotive, without reference to their size, quantity, or the distance they are thrown.

Under P. S. 4510, where a fire is proved to have been communicated from a locomotive, the burden of proof as to negligence is shifted from plaintiff to defendant, not because of any legal inference of negligence on

defendant's part, but merely as a matter of reasonable and convenient procedure.

In an action against a railroad company for damage by fire communicated from defendant's locomotives, although, if the fire is proved to have so originated, the burden is on defendant to negative any negligence that could be the proximate cause of the fire, the declaration must specify the respects wherein defendant is claimed to have been negligent.

In an action against a railroad company for damage by fire communicated from defendant's locomotives, if the referees had found, as defendant requested, that the train that passed the place of the fire shortly before it began was not a heavy train for the two locomotives that drew it, that finding would not have been inconsistent with the ultimate finding that defendant was negligent; and hence the failure to make the requested finding could not have prejudiced defendant.

An exception to referees' failure to make a requested finding will not be considered, where the record does not purport to disclose all the evidence on the point in question.

In an action against a railroad company for damage by fire communicated from defendant's locomotives, where the referees did not find defendant negligent because of any failure of its sectionmen promptly to discover and attend the fire, it was immaterial as to defendant's liability whether the referees should have found that the sectionmen discovered and attended the fire "as soon as the train passed," instead of "soon after the train passed."

In determining whether four disastrous fires that were kindled within about three weeks by sparks emitted from defendant's locomotives were due to its negligence, it was proper to consider the extraordinary dryness of the season, the construction and equipment of its locomotives, the manner of their operation, and the management of the railroad, and whether defendant exercised the care of a prudent man in the circumstances, to prevent the spread of fires kindled by sparks from its locomotives.

A finding that sectionmen tried in vain for five hours to extinguish a fire is equivalent to a finding that the fire was during that time continuously beyond their control.

"Due caution" means caution commensurate with the existing hazards.

Where a case is referred the pleadings, including the declaration, are to be treated as adapted to the facts found, unless to do so would bring a new cause of action into the case.

In an action against a railroad for damage by fire communicated from defendant's locomotives, where it appeared that the fire did so originate, if, because of the dryness of the season and of the timbered country through which the railroad ran, the usual way of operating the railroad was not a sufficient compliance with defendant's duty to exercise due care for the protection of property, defendant must show that it exercised additional care commensurate with the increased hazard.

In an action against a railroad company for damage by fire communicated from defendant's locomotives, where it appeared that the fire did so originate, and defendant failed to negative negligence on its part, the question whether it could have produced its train record as bearing on due care in operating its trains, the non-production of which the referees considered in finding defendant negligent, became immaterial.

In an action against a railroad company for damage by fire communicated from defendant's locomotives, certain findings *held* material; and certain other findings sufficiently specific, and not objectionable as not showing what defendant did or ought to have done, to avoid injuring plaintiff's property.

A referee, or board of referees, is a tribunal substituted for a jury, and should find those ultimate facts that are ordinarily submitted to a jury.

In an action against a railroad company for damage to timber land by four fires occurring within about three weeks and kindled by sparks from defendant's locomotive, where the referees found that the fires were so kindled, and that defendant was negligent in not taking extra precautions in caring for its right of way through the timber land in view of the excessive dryness of the season, and in not employing more men to assist in putting out the fires, and in not changing the manner of operating its trains, in respect of the number of loaded cars hauled in a train, or in the use of helper locomotives on grades, a finding of negligence in a particular manner as to any one of the fires was not necessary to render defendant liable.

A mortgagee of real estate has no interest in the history of the mortgaged premises previous to the execution of his mortgage.

Until entry or foreclosure by the mortgagee of real estate, the mortgagor in possession after condition broken is the owner of the premises as against every one except the mortgagee, or those claiming under him, and is entitled in his own name to maintain an action against a stranger for injury to the premises, and the measure of his damages is the entire injury to the property, for its impairment in no way lessens the debt thereby secured.

An excepting party will be confined in this Court to the claims that he made below.

A property owner must exercise the care of a prudent man to protect his property from fire kindled by sparks from railroad locomotives after he learns thereof, and cannot recover for injury proximately caused by his failure to exercise that care; but he need not, in the first instance, anticipate negligence on the part of the railroad company.

The lawful maintenance and use of property along a railroad right of way does not of itself constitute negligence that contributes to its destruction by fire kindled by sparks from locomotives.

In an action against a railroad for damage by fire communicated from its locomotives, where the question of contributory negligence was not raised at the trial before the referees, nor by the exceptions to their report, it cannot be first raised in this Court.

That a railroad company did not run any more or heavier trains than it was bound to on the days that fires were communicated to timber lands by its locomotives, and was not negligent in not dividing its trains into two sections, did not excuse it from liability where it negligently failed to exercise extra care in view of the excessive dryness of the season, and failed to employ extra men to watch its right of way, and assist in putting out fires.

CASE for negligence in setting fires. Heard on the pleadings, referees' report and defendant's exceptions thereto, at the December Term, 1909, Caledonia County, *Stanton*, J., Presiding. Exceptions overruled, and judgment for the plaintiff for the damages found by the report, and costs. The defendant excepted. The opinion states the case.

*Young & Young* for the defendant.

If this action is maintainable, it should have been brought by the mortgagee. *Adams* v. *St. Johnsbury & L. C. R. R. Co.*, 57 Vt. 240; *Wade* v. *Hennessy*, 55 Vt. 207; *Brooks & Berry* v. *Hubbard et al.*, 73 Vt. 122; *Gooding* v. *Shea*, 103 Mass. 360; *Jeffers* v. *Pease and Stevens*, 74 Vt. 215. The assignment of the mortgagee's claim to plaintiff after suit brought cannot avail him. *Seaver* v. *Durant*, 39 Vt. 103; *McDaniel* v. *Reed et al.*, 17 Vt. 674-678; *Stanley* v. *Turner*, 68 Vt. 315; *Hall* v. *Peck*, 10 Vt. 474; *Hawley* v. *Spear*, 18 Vt. 320; 1 Chitty on Pleading, 60; *Heald* v. *Warren*, 22 Vt. 409; *Probate Court* v. *Hull*, 58 Vt. 306; *Murtey* v. *Allen*, 71 Vt. 377; *Howard* v. *Bartlett*, 70 Vt. 314; *Ingraham* v. *Dennell et al.*, 5 Met. 118; *Swift* v. *Crocker*, 21 Pick. 241; *Ilsley* v. *Jewett*, 2 Met. 168, 175.

This case is referred to be tried by the rules of the common law, and hence P. S. 4510 does not apply, and there is no burden on defendant; but, if that statute does apply, the only burden on defendant is to establish that its locomotives were properly equipped and operated. *Melendy* v. *Ames & Co.* 62 Vt. 14; *Latremouille* v. *Railroad Co.*, 63 Vt. 336; *Lindsay* v. *C. & P. R. R. Co.*, 27 Vt. 643; *Howrigan* v. *Bakersfield*, 76 Vt. 249; *Mobus* v. *Town of Waitsfield*, 75 Vt. 122; *Woodward et al.* v. *Chicago etc. Ry. Co.*, 145 Fed. 577; *Daley* v. *Railroad Company*,

43 Minn. 319; *Smith* v. *Railroad Company,* 4 N. Dak. 17; *Railroad* v. *Yerger,* 73 Pa. 121; *Spaulding* v. *Railroad Company,* 30 Wis. 110; *Spaulding* v. *Railroad Company,* 33 Wis. 582; *Huber* v. *Railroad Company,* 6 Dak. 392; *Kentucky Cent. R. Co.* v. *Talbert,* 78 Ky. 621; *Vaughn* v. *Railroad Co.,* 5 H. & N. (5 Exch. ) 679; *Ide* v. *Boston & Maine Railroad Co.,* 83 Vt. 66.

The primary duty of defendant is to the State and to its patrons, to operate its trains with reasonable speed and at regular intervals to accommodate passengers and shippers. Acts of 1848, p. 70, charter; P. S. §§ 4339, 4486, 4488; *Hagen* v. *C. D. etc. Co.,* 86 Mich. 615, 49 Am. & Eng. R. R. Cas. 670; *McGibbon* v. *Northern etc. Co.,* 11 Ontario Reports, 307, 25 Am. & Eng. R. Cas. 486; *Mississippi Home Ins. Co.* v. *Louisville etc. R. Co.,* 70 Miss. 119, 54 Am. & Eng. R. Cas. 512; *Tribette* v. *Ill. Cent. R. Co.,* 71 Miss. 212; *Brown* v. *Atlanta etc. R. Co.,* 19 S. C. 39; *Frankfort* v. *Railroad Co.,* 54 Pa. St. 345; *Baltimore etc. R. Co.* v. *Woodruff,* 4 Md. 242; *Baltimore etc. R. Co.* v. *Shipley,* 39 Md. 251; *Railway Co.* v. *Hendrickson,* 80 Pa. St. 182; *Kellogg* v. *Chicago etc. R. Co.,* 26 Wis. 232; *Daley* v. *Railroad Co.,* 43 Minn. 319; *Railroad Co.* v. *Paramore,* 31 Ind. 143.

As against plaintiff, defendant had the right to conduct its business in the usual way, and for fires caused without negligence defendant is not liable. *Cleveland* v. *Grand Trunk Railway Co.,* 42 Vt. 449; *Farrington* v. *Rutland R. R. Co.,* 72 Vt. 24; 3 Elliott on Railroads, §1232; *Brown* v. *Atlanta etc. R. Co.,* 19 S. C. 39; *Libbey* v. *Maine Cen. R. R. Co.,* 58 Am. & Eng. R. R. Cas. 81; *Tuller* v. *Talbot,* 23 Ill. 357; *Railway Co.* v. *Blakely,* 6 Kan. Ct. App. 814, 3 Am. Neg. Rep. 24; *Railway Co.* v. *Dennis,* 38 Kan. 424; *Railroad Company* v. *Westover,* 4 Neb. 268; *Rosen* v. *Chicago etc. R. Co.,* 27 C. C. A. 534-536, 83 Fed. 300; *Smith* v. *Railroad Co.,* 3 N. Dak. 17; *Railroad Co.* v. *Packwood,* 7 Am. & Eng. R. Cas. 584; *Louisville etc. Co.* v. *Reese,* 85 Ala. 497, 7 Am. St. Rep. 66; *Jackson* v. *Railroad Co.,* 31 Ia. 176, 7 Am. Rep. 120; *Webb* v. *Railroad Co.* 49 N. Y. 420, 10 Am. Rep. 389.

*Dunnett & Slack, W. B. C. Stickney, and Harry Blodgett,* for the plaintiff.

The plaintiff's right to recover is not affected by the two mortgages outstanding at the time the suit was brought.    A mortgagor, while in possession, is the absolute owner of the property, except as to the mortgagee, and  can maintain any action for injuries thereto  committed by strangers.    Jones on Mortgages, 5th Ed., §664; 20 Enc. of Law, 2nd Ed., 980; 27 Cyc. 1272; *Hooper* v. *Wilson,* 12 Vt. 695; *Cooper* v. *Cole et al.,* 38 Vt. 185; *Wilder* v. *Davenport,* 58 Vt. 642; *Atwood* v. *Moosehead Paper & Pulp Co.,* 85 Me. 379; *Eaton* v. *Whiting,* 3 Pick. 488; *Goodwin* v. *Richardson,* 11 Mass. 469; *Collins* v. *Hawley,* 7 John. 278; *Jackson* v. *Pratt,* 10 John. 88; *Watson et al.* v. *Spens,* 20 Wend. 260; *Walker* v. *King,* 44 Vt. 612; *Ellison* v. *Daniels,* 11 N. H. 274; *Parish* v. *Gilmanton,* 11 N. H. 293; *Southern* v. *Mendam,* 5 N. H. 420.

The facts reported, as to the origin and spread of the fire, establish the defendant's liability.    *Pittsburg etc. R. R. Co.* v. *Noel,* 7 Am. & Eng. R. R. Cas. 524; *Ide* v. *B. & M. R.R.,* 74 Atl. 401; *Farrington* v. *Rutland R. R. Co.,* 72 Vt. 24; *Cleveland* v. *Grand Trunk Ry. Co.,* 42 Vt. 449; see note 62 Am. St. Rep. 171; *St. Louis etc. Ry.* v. *Matthews,* 165 U. S. 12; *Great Western R. R.* v. *Bacon,* 30 Ill. 347; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294.

The provisions of P. S. 4510 are substantive law, and not rules of procedure.    *Laird* v. *Railroad,* 62 N. H. 254; *Grand Trunk* v. *Richardson et al.,* 91 U. S. 472.

HASELTON, J.    This is an action to recover damages sustained by the plaintiff in consequence of certain forest fires which burnt over lands in the County of Essex in the spring, or early summer, of 1903.    The plaintiff claimed that these fires were communicated by locomotive engines on the line of the defendant corporation.

The case was tried by referees to whom it was referred "to be heard and tried according to the rules of the common law."    Some discussion has been had as to the effect of this reference, since questions of law arising upon the face of the report were submitted to the trial court, and since, therefore, it is material to know whether the substantive rights of the parties are determined by our statute, P. S. 4510, or by the common

law. In some of the plaintiff's counts he expressly declares upon our statute. The defendant filed the general issue with notice of special matter in defence in accordance with our statute,. P. S. 1499. The reference of the case to be heard and tried,. according to the "rules of the common law" did not circumscribe the cause of action, nor affect the burden of proof, nor the right of the plaintiff to recover if he made out a case under our statute, nor any matter which, so far as appears, arose on trial.

The referees found that four fires called respectively the pine stump fire, the stone dam fire, the gravel pit fire, and the Gilbert fire, were communicated by sparks thrown out of the defendant's engines, and, subject to the opinion of the court,. they find that the plaintiff is entitled to recover damages in a sum stated for the injuries caused by these four fires. Judgment for the plaintiff was rendered on the report.

The exceptions taken and relied on are to the overruling of a motion to recommit the report, to the overruling of exceptions to the report and to the rendering of judgment on the report.

The motion to recommit was addressed to the discretion of the trial court, and its ruling upon that motion was not matter for exception. In common with courts in general we have uniformly held to this doctrine. *Jeffers* v. *Pease,* 74 Vt. 215, 52 Atl. 422; *Wilkinson's Admr.* .v. *Wilkinson,* 61 Vt. 409,. 17 Atl. 795; *Morse* v. *Beers,* 51 Vt. 359.

Adherence to this rule is necessary if trials by referees are to be a help, rather than a hindrance, in the administration. of justice. It may be said, or thought, that there are exceptional cases in which, from the defective character of a report which the trial court has refused to recommit, grave injustice may befall one party or the other through the application of this rule. But in those exceptional instances in which this Court feels. that it ought not to dispose of a case with a referee's report standing as it does, the Court, whether or not a motion to recommit was made below, has and exercises the power to remand in order that a recommital may be ordered. *Life Ins. Co.* v. *Chase,* 72 Vt. 176, 47 Atl. 825; *Cleaveland* v. *Dinsmore,.*

59 Vt. 436, 8 Atl. 279; *National Bank* v. *Strait*, 58 Vt. 448, 3 Atl. 541;

Thus the convenience and integrity of our system of trial by referees is preserved, vexatious delays are prevented, and yet the danger of a miscarriage of justice through a shortage of findings in respect of dominating facts is reasonably averted. The grounds of the motion to recommit will be pointed out in connection with the consideration of the defendant's exceptions to the report.

The defendant filed various exceptions to the report of the referees. These were overruled by the county court, and to the action of the court in overruling them the defendant excepted. The first exception to the report was taken because the referees did not find, as requested, that no steam locomotive has ever been built that can draw a train of cars upon a level, or up grade, without emitting more or less sparks and cinders, and because the referees made no finding upon that subject. As to this matter the referees report, in substance, that the defendant's evidence tended to support the request, and that the plaintiff introduced no evidence upon the point. Upon the general proposition of the request the referees make no finding. But the referees find from all the evidence "that the defendant's engines were in good condition and were well cared for in the respect of throwing fires, and that the defendant corporation used the latest and most improved methods as to screening the stacks of the engines to prevent throwing fire." This concrete finding covers the ground of the request so far as the defendant was entitled to have it covered. It exonerated the defendant from fault in respect to the construction and equipment and condition of its engines. It is said in argument that a finding in accordance with this undisputed evidence was needed for its bearing on the legal inference to be drawn from the fact that fire was communicated from the defendant's engines; that as bearing on this legal inference it is material to know whether there are engines in known practical use which do not emit sparks and cinders; that if there are engines in known practical use which do not emit sparks and cinders, when drawing trains, then the operation of an engine which emits sparks

sufficient to cause a fire may be evidence of negligence on the part of the defendant. It is observed in respect to this argument that the request did not relate to engines in known practical use, but that the referees were asked to find that no engine had ever been built that could even "draw" a train on an up grade, or on a level, without emitting sparks. But in this State there is no legal inference of negligence consequent upon the mere escape from an engine of sparks without reference to their size or quantity or the distance to which they are thrown. When it is proved that fire had been communicated from an engine, the burden of proof as to negligence is shifted from the plaintiff to the defendant not because of any legal inference of negligence on the part of the defendant but merely as a matter of reasonable and convenient procedure. *Huntley* v. *Rutland R. Co.*, 83 Vt. 180, 741 Atl. 1000; *Ide* v. *Boston & Maine Railroad*, 83 Vt. 66, 74 Atl. 401. This first exception to the report states one of the grounds of the motion to recommit.

The second exception to the report was taken on the ground that the referees failed to find, in accordance with the defendant's request, whether or not the train from which the fire was communicated which set the fire called the "pine stump fire" was or was not a heavy train for the two engines that were then drawing the train. The request was not in the alternative, but was a finding that the train referred to was not a heavy train for the two engines that were then drawing it, and was one element of a fourfold request relating to that train. The referees found that the head engine at least was working lightly at the point in question but failed to find, in express terms, that the train was not a heavy one for the two engines. The report does not refer to the transcript of the evidence which consists of some five thousand pages. In answering the defendant's request the referees set it out as it was made, and this request, incorporated by reference such portions of the evidence as the defendant chose to call to the attention of the court. But the request even does not purport to contain a reference to all the evidence upon the point to which it refers. *Smith* v. *Stannard*, 81 Vt. 319, 70 Atl. 568; *Holt* v. *Howard*, 77 Vt. 49, 58 Atl. 797.

The witness whose testimony is evidently relied on as compelling a finding that the train was not a heavy one was the engineer on one of the locomotives.    He didn't remember how many cars were in the train, and we are referred to no evidence tending to show the nature of the freight carried. We find in the case a statement by counsel for the defendant that a train register kept at North Stratford, which counsel thought would show the number of cars in a train, had disappeared, and that a similar book kept at Island Pond had been destroyed.    The engineer who testified that his locomotive was working light steam, also testified that he didn't know how the other engine was working, that he didn't pay enough attention to it to really know.    He then added that the other engine was working lightly.    This last statement was obviously a guess or an impression.    One or both of the engines must have been working hard enough to draw the train on an up grade.    How the matter stood upon the whole evidence we are of course unable to say.    We have no reason to suppose that the referees did not give due consideration to the evidence adduced by the defendant, nor that the request was not answered as fully and as favorably to the defendant as a consideration of the whole evidence permitted.

The report shows that the pine stump fire caught within the defendant's right of way, and only from ten to twenty feet from the very track, at a place usually wet and marshy but during the period in question   dry and covered with dry grass.    A finding that the train which passed this place just before the fire started was not a heavy one for the two engines that were drawing it, if the referees had been able to make such a finding and had made it, would not have been inconsistent with their ultimate finding and so would have been immaterial.

This second exception states one of the grounds of the motion to recommit.

The third exception to the report was based on the claim that the referees had not, as requested, found "whether or not the four section men were within full view of the place where the pine stump fire started at the time it started."    The request was not in the alternative but was for a finding that at the time the pine stump fire started the defendant had four

section men within one-half mile of and in full view of the place where the fire started. The referees found that at the time the fire now in question started the four section men were about a half a mile from the point where it started. But they fail to find that they were within full view of the place where it started. This exception stands like the one last considered. There is nothing to show that the whole evidence is before us. From that which was incorporated by reference into the defendant's request we can, however, understand the obstacle which the referees found in the way of saying that these men were in any fair sense in full view of the place when it started. The report shows where the fire started, the nature of the place, the approximate distance of the section men from it. The evidence referred to tended to show that the fire started in a low place called a sag and that this sag was about twenty feet wide. This third exception states another of the grounds of the motion to recommit.

The fourth exception to the report was taken on the ground that the referees had not found, as requested, whether or not the four section men referred to discovered the pine stump fire before, or as soon as, the train passed them, nor whether they went immediately to the fire and did everything in their power during that afternoon to stop the fire, nor whether or not the fire was beyond their control when they quit work. The requests referred to in this exception were scattered. A part of a request numbered "seven" was for a finding that the four section men discovered the fire before, or as soon as, the train passed, went immediately to the fire and did everything in their power to stop it. A part of a request numbered "nine" was for a finding as to what efforts these four men made to stop the fire immediately after it started, and another part of the same request, which is somewhat long, was for a finding as to how quickly the four employees reached the fire after it started and the efforts they made to extinguish it. The referees reported "that the fire was discovered soon after the train passed and that the section gang of four men went immediately to the fire and worked from a little after one o'clock until about six P. M., their regular quitting time, trying to put it out

.and then left and that no further attention was given to this fire by the defendant company or its employees." In respect to the evidence bearing upon this fourth exception to the report we are left as we are in respect to the evidence bearing upon the second exception and the third. But such evidence as was by reference incorporated into the requests shows that the exception is without just foundation.

The section foreman first testified that as the train was near him he didn't notice anything and didn't remember that his attention was called to anything. He then said that "after the train, the engine", went by he saw smoke near the track, that he couldn't say exactly where the front end of the train was when he saw the smoke, that the whole train hadn't passed him when he saw the smoke, that he didn't remember how his attention was called to the smoke, that after the train passed he and his men went to the fire. Another of the section men testified that he saw the smoke before the front engine of the train got to where the section men were; that after the train passed the men went down to where the smoke had been seen. Another of the section men testified that he saw nothing of the smoke until after the train went by when his attention was called to it by a fellow section man, whereupon the section men went down to where the fire was. According to the testimony of one William Stott, who appears to have been the engineer on one of the engines drawing the train in question, he was the discoverer of the fire, and saw it or the smoke from it as his engine was going by it, and that when he got to where the section men were and was going by them at a speed of from twenty to thirty miles an hour he called their attention to the fire by pointing back to it.

The defendant in arguing the case claims that the referees attribute no negligence to the defendant on account of any failure of the section men promptly to discover the fire and to go to it immediately upon its discovery and this claim is correct, and so there is no reason for discussing the question of whether the referees should have used the phrase "as soon as the train passed" instead of "soon after the train passed."

On the evidence referred to by the defendant, the finding

as to what the section men did in fighting the fire was as full and as favorable to the defendant as was warranted. The snatches of evidence referred to tended to show that the section men had not got the fire under control when they quit work and that some witnesses considered it beyond their control, and the finding of the referees that the section men tried for five hours to put the fire out without succeeding, was equivalent to a finding that it was beyond their control from first to last. The referees have based no finding of negligence on the failure of these section men to do what they could. This fire started about a mile only from the station at Wenlock and about nine miles only from the division headquarters at Island Pond and the question of whether the defendant should have been in a situation to re-enforce these four men and should have done so instead of leaving them throughout a long May afternoon to carry on a hopeless struggle is a question not raised by any exception to the report. This fourth exception shows another of the grounds on which the motion to recommit was based.

To understand the fifth exception to the report it is necessary first to refer to the report. After exonerating the defendant from all blame in respect to the kind of engines used by it and the appliances used to prevent the throwing of fire and from all blame in respect to the condition thereof, the referees say it appeared from all the evidence and that they find that in the locality in question, the month, covering or immediately preceding the starting of the fires set by the defendant's engines, was very dry, the dryest ever known so far as was shown by weather records in evidence. They then make the following finding: "During the times when the fires in question were set, there was no change nor modification in the way the defendant's railroad was operated in this vicinity in reference to the way its trains were made up, the number of loaded cars hauled in a train, or the use of a helper engine on the grades in that vicinity." The defendant asked the referees to report the evidence on which the above finding was based. This was the defendant's thirteenth request for additional findings. In response the referees reported as follows: ' "As to the thir-

teenth request, we report that early in the hearing and before the close of his evidence, the plaintiff gave the defendant notice to produce 'all train registers showing or designed to show the number of cars, the number of the engines and the numbers of the trains operated between North Stratford, New Hampshire, and Island Pond, Vermont, between April 1, 1903, and July 10, 1903,'—the plaintiff stating that he claimed the production of such registers would show that 'no difference was made either in the number of cars on the train or the motive power of the train during all that time, that is, in the dry season or wet season it was just the same'. The defendant did not produce the registers called for by the notice. The defendant did not introduce any evidence that there was a change or modification in the way the defendant's railroad was operated in this vicinity in May and June, 1903, in reference to the way its trains were made up, the number of loaded cars hauled in a train or the use of a helper engine on said grades. The evidence standing in this situation, the referees found the fact as referred to in defendant's thirteenth request."

North Stratford and Island Pond are about twenty-eight miles apart and it was along the line of the defendant's road between these two points that the four fires in question were communicated.

This fifth exception to the report was in substance that the above part of the report did not set out the evidence on which was based the finding to which it was referred. Following the taking of this exception, a concession was made which set out the notice in full and all that was said in response thereto in accordance with the claim of the defendant. It was further conceded by the plaintiff that the grounds stated by the referees for the finding in question were the sole basis of such finding and that the concession might be treated as embodied in the report of the referees. The defendant then filed an additional exception on the ground that the report and concession show no testimony tending to support the finding referred to. The concession as to the notice and what was said in reference thereto covers four pages of the exceptions and it is not deemed necessary to recite it in full. The plaintiff had shown a state of

things in respect to the phenomenal dryness of the season and the condition of the territory in question which called for special precautions on the part of the railroad company to prevent the starting of fires by its engines, and the spread of fires so started whether the igniting sparks lit on the right of way or on adjacent property.

In determining whether or not the defendant was negligent in respect to these four disastrous fires communicated by its engines within the space of about three weeks, the referees were right in giving consideration to the extraordinary dryness of the season, in considering not only the construction and equipment of the defendant's engines, but also their operation, and the management of the road, and in recognizing that it was the duty of the company in the circumstances to exercise the care and prudence of a prudent man in like circumstances to prevent the spread of fires started by sparks from its locomotives, and in inquiring as to whether the defendant took precautions called for by the special and extraordinary danger to property. *Ide* v. *Boston & Maine R. R.*, 83 Vt. 66, 80, 96, 74 Atl. 401; *Smith* v. *Central Vermont Ry. Co.*, 80 Vt. 208, 67 Atl. 535; *Grand Trunk R. R.* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356; *Milwaukee &c. Ry. Co.* v. *Kellogg*, 94 U. S. 469, 472, 475, 24 L. Ed. 256.

In several states, as in New Hampshire, Massachusetts, Maine and Missouri, proof that an injury has resulted proximately from fire communicated by a locomotive engine renders the railroad company absolutely liable. This liability does not attach because upon such proof the railroad company is to be taken to have been negligent, but because though both the plaintiff and the defendant may be free from negligence the statute law undertakes to say who, as between two innocent parties, shall bear the loss. The true ground upon which such statutes rest is shown in *St. Louis &c. Ry. Co.* v. *Mathews*, 165 U. S. 1, 41 L. Ed. 611, 17 Sup. Ct. 243.

Our statute both in terms and in spirit goes part way with the statutes of the states referred to. If nothing is shown on the subject of negligence the statute says that the loss shall be borne by the railroad company. But the statute says

further that if the railroad company will and can affirmatively show that it was free from negligence then the loss shall rest where it falls.  There is no shifting of the burden of proof in consequence of a presumption of negligence arising from the mere communication of the fire, for there is no such presumption, but the law permits a railroad company to relieve itself from liability by showing freedom from negligence on its part.  So it cannot be said that the burden is on the plaintiff to show negligence on the part of the railroad company in any respect whatever.  The burden is on the railroad company, if it would relieve itself from liability, to show, on its part, freedom from any negligence which was a proximate cause of the fire, whether in respect to its engines, their construction, condition, and operation or in respect to any other matter resulting in injury from fire communicated by their locomotives.  Its case in this respect, except as hereinafter noted, is like that of the plaintiff in this and many jurisdictions in ordinary cases of negligence.  The plaintiff in such cases must show himself free from contributory negligence, not in one or two respects but in all.  Neither rule operates harshly in practice for the whole  story of the injury and of the circumstances attending it is usually evidence tending either to exonerate or inculpate the party upon whom the burden lies.  The exceptional matter just referred to is that though the burden of proof on the question of negligence is on the defendant the plaintiff is required in his declaration to point out the respects in which he claims that the defendant was guilty of negligence.  This is a matter of reasonable and convenient practice.  *Smith* v. *C. V. Ry. Co.*, 80 Vt. 208, 67 Atl. 535.

Here it is not claimed in argument that the duty of the defendant in respect to showing itself free from negligence was circumscribed by any lack of allegations on the part of the plaintiff, and the case having been referred no such claim could well be made.  For in the case of a reference the pleadings, including the declaration, are to be treated as adapted to the facts found if such adaptation does not bring in a new cause of action.  *Gordon's Admr.* v. *Hotchkiss*, 82 Vt. 479, 74 Atl. 74; *Lamb* v. *Zundell*, 79 Vt. 232, 62 Atl. 33.

Under our statutes the burden was on the defendant to show that due caution and diligence were used by it to prevent injury from fire emitted by its locomotives. Due caution means caution commensurate with existing and surrounding hazards. By the notice and by what was said in connection with it counsel for the plaintiff precisely indicated a matter in respect to which their contention was that the defendant had failed to use due caution and diligence to prevent injury from fires set by their locomotives. The defendant had pointed out to it the natural means by which it could exonerate itself if blameless. If, as was claimed in the discussion before the referees, the indicated means were not available the defendant was seasonably apprised of the ground on which the liability would be urged and was afforded an opportunity to exonerate itself by other testimony. The issue was distinctly made, the burden in respect to it was upon the defendant, and the matter standing as it did the referees were justified in finding as they did. The finding stands in connection with other findings which are unchallenged, one of which is that the defendant took no extra precaution in respect to caring for its right of way through the timber lands in question notwithstanding the dryness of the season, that it did not employ extra men to watch the right of way or to assist in putting out fires other than to bring in men in one or two instances to assist the local gangs in caring for the fires, and that in these particulars, as well as in respect to the matter to which the finding excepted to, relates, the defendant "came short of exercising the care and prudence which a prudent man would have exercised in the circumstances." In supplemental findings the referees report that the division head quarters of the defendant were at Island Pond about eight miles from Wenlock and that the extreme dryness of the season was known to the officers and employees of the defendant.

The burden of proof was on the defendant to show the exercise of the care and prudence made requisite by the circumstances, and since, as the referees have in effect found, the usual way of operating the road was not a compliance with the defendant's duty in the special circumstances, the burden was

on the defendant to show a more than ordinarily careful and prudent operation of the road, and so with the claim of the plaintiff in this respect clearly indicated as it was, and in the absence of evidence on the point, the fact was properly taken against the defendant, the party having the burden of proof, without reference to the question of whether or not the evidence that was called for could have been produced but was withheld or suppressed. *Scoville* v. *Brock*, 79 Vt. 449, 65 Atl. 577, 118 Am. St. Rep. 975.

It is argued in the brief for the defendant that the referees could not base a finding of negligence on a mere failure to make a change in the operation of the road, without reference to the character of the change. But it is clear enough that the referees refer to a change in the direction of extra precautions against the starting and spreading of fires, precautions called for by extraordinary conditions existing.

All the grounds of the motion to recommit that were finally relied on in the court below have been noticed in connection with the consideration of the exceptions to the report. The exceptions to the report were properly overruled. Nor were the grounds of the motion to recommit of such a character as to make this a case for the exercise by this Court of the power which in exceptional circumstances it exercises to remand for the purpose of a recommital.

The defendant excepted to the judgment on the report. The exceptions were amended for the purpose of showing what questions were raised not only on the motion to recommit the report but also upon the hearing had upon the report and the concession hereinbefore referred to, after such motion was overruled. Upon the hearing upon the report and the concession, the defendant furnished the court its claims typewritten. Such claims were twenty-six in number and were as follows:

*First.* "There is no liability on the part of a railroad company for setting fires unless it is guilty of negligence."

Here the referees found the defendant guilty of negligence.

*Second.* "On the evidence in this case no engine has ever been constructed which will draw a train without emitting more or less cinders."

The immateriality of this abstract claim has already been sufficiently commented on.

*Third.* "The report finds that the defendant's engines were in good condition and were well cared for in the respect of throwing fires, and that the defendant corporation used the latest and most improved methods as to screening the stacks of the engines to prevent throwing fire."

This claim is correct, but it does not touch the question of the negligent conduct which the report attributes to the defendant.

*Fourth.* "There is no finding, in the report, of negligence on the part of the defendant as to its manner of conducting its business prior, or subsequent to, the times when the fires in question were set."

The absence of such finding is immaterial.

*Fifth.* The fifth claim sets out the following findings in the report. "During the times when the fires in question were set there was no change or modification in the way the defendant's railroad was operated in this vicinity in reference to the way its trains were made up, the number of loaded cars hauled in a train, or the use of a helper engine on the grades in that vicinity. The defendant corporation took no extra precaution in respect to caring for its right of way through the timber lands in question, notwithstanding the dryness of the season; it did not employ extra men to watch the right of way or to assist in putting out fires other than to bring in men from other track sections in one or two instances to assist the local gangs in caring for the fires. In these particulars, we find that the defendant came short of exercising the care and prudence that a prudent man would have exercised in the circumstances and that such negligence contributed to the origin and spread of said fires."

The claim is made that these findings are immaterial in that they do not present the test of liability on the part of the defendant. That they do not show what the defendant did to avoid injuring the plaintiff's property, nor what the defendant ought to have done in so far as that is a question of fact. However, we think the findings in the paragraph quoted are material and are suffi-

ciently specific. Where a question of agency is involved referees should find directly upon that question. *Vilas National Bank* v. *Strait*, 58 Vt. 448, 3 Atl. 541.

Whether one has adopted or ratified the act of another is for the referees to find, when the trial is by a referee, and that question is in issue. *Darby* v. *First National Bank of St. Albans*, 57 Vt. 370.

So it is for a referee to determine whether the facts in evidence show an implied promise. *Bliss* v. *Hoyt's Estate*, 70 Vt. 534, 41 Atl. 1026.

Whether or not a sale is fraudulent is for the determination of the referee. *Weeks* v. *Prescott*, 53 Vt. 57.

And so questions of due caution and diligence are for the referee. *Roth* v. *Colvin*, 32 Vt. 125.

A referee, or a board of referees, is a tribunal substituted for a jury, and the theory that referees are not to find ultimate facts such as must be submitted to a jury has been again and again discountenanced by this Court.

We resume the enumeration of the grounds of the exception to the judgment.

*Sixth.* "The only negligence found by the report is that there was no change in the management of defendant's railroad during the dry spring of 1903."

The negligence found by the referees has already been pointed out.

*Seventh.* "The failure to make a change in the management of defendant's road is not necessarily negligence on the part of the defendant."

The referees do not find that such failure was necessarily negligence, but that, under the circumstances, it was, in fact, negligence.

*Eighth.* "The report shows no negligence on the part of defendant which entitles the plaintiff to recover on account of any of the fires mentioned in the report."

The finding of negligence relates to all of the four fires which the referees find were communicated by the defendant's engines.

*Ninth.*   "On the report, and concession of the plaintiff made on hearing, there is no evidence tending to support the finding that there was no change nor modification in the way defendant's railroad was operated."

This finding has already been sufficiently treated of in considering the exceptions to the report.

The tenth claim under the exception to the judgment reasserts the positions respectively taken by the defendant in its five exceptions to the report already noticed. These positions it is unnecessary further to consider.

The eleventh, twelfth, thirteenth and fourteenth claims under the exception to the judgment are directed to what the report shows respectively as to the "pine stump fire", the "stone dam fire", the "gravel pit fire", and the "Gilbert fire", and these claims assert that the report shows no liability on the part of the defendant in respect to any one of these fires. But the finding is that all these fires were communicated by engines of the defendant, and the finding of negligence already referred to is, as was just said, made with reference to all of these fires.

The fifteenth claim is that in view of the findings no change in the manner of operating the road was called for and that a change would have been imprudent. But, as we have seen, this claim is answered by the findings.

The sixteenth claim is that there is no finding that the defendant disregarded its duty in any respect except in making no change in its management during the dry time; and that if it was in the exercise of due care and caution no change was required and that so it is immaterial whether or not there was a change. But due care and caution in ordinary times might well fall short of such care and caution in an exceptionally dry time, and this claim is fairly met by the findings.

The seventeenth claim is that the report shows no negligence in any material matter. This claim has already been considered.

The eighteenth claim reverts to the pine stump fire and asserts that the report shows the defendant to have done all that a prudent man would have done to prevent the setting of the fire and to prevent the spread of it. But this claim is

met by findings applicable to all four of the fires found to have been set by the defendant's locomotives.

The nineteenth claim is that the report shows no such title in the plaintiff as entitles him to recover damages.

This claim has been very fully argued and is based upon the evidence and findings with regard to two certain mortgages given by the plaintiff.  The second of the mortgages, given to Thomas Van Dyke, was not given until more than two months after the last of the fires.  The report shows that while this suit was pending the mortgagee, under this mortgage, gave to the plaintiff a quit claim deed of his interest in all the lots damaged by the fires in question and that such deed contained a clause assigning to the plaintiff any claim which Thomas Van Dyke might have on account of the fires.  But as to the mortgage to Thomas Van Dyke it is unnecessary to consider this quit-claim deed, for his mortgage gave him no interest in the history of the premises previous to the date of his mortgage, no interest in the causes by which they had been brought into the condition in which he found them when he took his mortgage deed.  If one takes a mortgage of a piece of land today it is no concern of his whether or not a month ago or a year ago there was a barn on the land, and, if there was at some previous time, and is not now, he is in no way interested in the question of how or when it was destroyed or removed.  In argument the matter of the mortgage to Thomas Van Dyke drops out of sight, and the claim of lack of title in the plaintiff rests upon the first of these mortgages which was given to one Morrison March 18, 1898, about five years before the fire.

This mortgage covers substantially all the lands damaged by the fires in question,—all except one lot in the third division of the town of Brunswick.  This mortgage is not yet fully paid. We do not find in such parts of the report as have been furnished us that this mortgage is referred to and made a part of the report. But as it is furnished us as a part of the printed case and as the argument proceeds throughout upon the claim that the part of the mortgage debt which remained unpaid at the time of the fire was overdue and the condition of the mortgage broken, we have felt at liberty to look into the mortgage, and we find

that this claim is correct, for the mortgage was given to secure‧ a note payable on demand and so the note was long overdue‧ for all purposes under the law merchant and under our statute‧ and decisions. *Kingsbury* v. *Butler*, 4 Vt. 458; *Morey* v. *Wakefield*, 41 Vt. 24, 98 Am. Dec. 562; *Dennett* v. *Wyman*, 13 Vt. 485, 489; *Camp* v. *Scott*, 14 Vt. 387; *Dawley* v. *Wheeler*, 52 Vt.‧ 574; *Verder's Exr.* v. *Verder*, 63 Vt. 38, 21 Atl. 611; *Clark* v. *Snow*, 60 Vt. 205, 207, 14 Atl. 87, 6 Am. St. Rep. 108; P. S. 2697.‧

After this suit was brought and nearly three years prior to the final hearing before the referees, the mortgagee, Morrison,. by a quit-claim deed released and quit-claimed to the plaintiff his interest in all the lots damaged by the fires in question and inserted in the quit-claim deed a clause assigning to the plaintiff any cause of action which he might have on account of the injury to the lots, caused by the fire.

The first question to be considered under this nineteenth claim is: Was the plaintiff at the time the suit was brought, with the Morrison mortgage outstanding and overdue, entitled to maintain this action?

After condition broken the legal title to the premises as between the mortgagor and the mortgagee is in the mortgagee, and the mortgagee has the right of immediate possession. This has been many times decided in this State.

But as to third persons the mortgagor in possession is treated as owner and the mortgagee as a security holder and so the mortgagor may exercise the rights of an owner in the preservation of the property although he may do nothing to the detriment of the security.

*Richards* v. *Sims*, decided in 1740, was a case in which there was evidence tending to show that a debt which was secured by a mortgage had been cancelled. But it was claimed that even if this was so the title remained in the mortgagee on the ground that the land itself had not been conveyed back to the mortgagor in any way that the law would recognize. In meeting this contention Lord Hardwicke recognized the doctrine which obtains here in respect to the estate of a mortgagee, for, calling it a conditional estate, he said that there is a difference both in law and in equity between conditional estates for securing

the payment of a sum of money and an absolute estate and that even in law the debt is considered the principal thing and the mortgage an accident only. And, proceeding, he said that in an action of ejectment where a mortgage title is relied on, if it is shown that the debt is satisfied the title is defeated and no writing in such cases is necessary, and this, said Lord Hardwicke: "Shows even the law considers the debt as the principal and the land as an accident only." *Richards* v. *Sims*, Barn. Ch. 90, S. C. 2 Eq. Cas. Abr., 617.

Since Barnadiston has frequently been referred to as an inacurrate reporter, and since the second volume of Equity Cases Abridged has come in for considerable criticism, we observe that the reports of *Richards* v. *Sims*, in the books cited,. appear to have been made each without reference to the other and that so their concurrence is pretty strong evidence of their accuracy. Besides, when in 1827, the question was before the House of Lords of whether a mortgage could be the matter of a *donatio causa mortis*, and it was held that it could, Lord. Eldon, after an examination of manuscripts in the possession of Lord Redesdale, declared that this very case in Equity Cases Abridged was reported from a manuscript note and that he had found authority to consider the report to be very correct.

*Duffield* v. *Elwes*, 1 Bligh. N. S. 497, 538, 539. Same case entitled *Duffield* v. *Hicks*, 1 Dow & Clerk, 1.

When *Richards* v. *Sims* was argued, Lord Mansfield, then Mr. Murray, was counsel in the case and then, or later, he formed a decided opinion as to the real nature of a mortgage, for in *Martin* v. *Mowlin*, 2 Burr. 969, his judgment was that: "A mortgage is a charge upon the land and whatever would give the money will carry the estate in the land along with it to every purpose. The estate in the land is the same thing as. the money due upon it. It will be liable to debts; it will go to executors; it will pass by will not made and executed with the solemnities required by the Statute of Frauds. The assignment. of the debt, or forgiving it, will draw the land after it as a consequence; nay, it would do it though the debt were forgiven by parol; for the right to the land would follow, notwithstanding, the Statute of Frauds." And again in *The King* v. *Inhabitants*

*of St. Michaels in Bath,* 2 Doug. 630, speaking without reference to the relation of a mortgagor to a mortgagee, he declares it to be "an affront to common sense" to say that a mortgagor in possession is not the real owner of the mortgaged property.

In this country the essential nature of a mortgage as it came to be understood by the clearest thinkers among English jurists before the Revolution has been almost universally recognized both by early and recent legislation, and by the courts of law. Chancellor Kent while Chief Judge of a common law court laid down the doctrine which now prevails. *Jackson* v. *Willard,* 4 Johns. 41; *Hitchcock* v. *Harrington,* 6 Johns. 290, 5 Am. Dec. 229.

In the last case cited after speaking of the mortgagor's relation to the mortgagee, he says of the mortgagor: "He is considered as the owner of the inheritance in respect to the rest of the world." And in *Jackson* v. *Pratt,* 10 Johns. 381, he asserts the same principle by saying, what had been said in a previous case in which he sat, that a stranger not claiming title under a mortgage cannot be permitted to set up the mortgage to defeat the title of the mortgagor.

Chief Justice Parsons of Massachusetts in an early case expressed the view which now prevails in this country, saying therein that a mortgagor in possession continues the owner of the land against all persons but the mortgagee or those who claim under him. *Willington* v. *Gale,* 7 Mass. 138, (1810.) Like rulings were early made in Connecticut and New Hampshire. *Clark* v. *Beach,* 6 Conn. 142; *Southerin* v. *Mendum,* 5 N. H. 420.

And when Greenleaf came to publish his edition of Cruise's Digest of the Law of Real Property, a work never superseded, he declared that the American Doctrine, "as now generally settled both at law and in equity is that as to all the world except the mortgagee the freehold remains in the mortgagor as it existed prior to the mortgage." 1 Greenl. Cruise's Dig. (Ed. 1856,) 572.

In his Commentaries Chancellor Kent states thus the doctrine which he had previously expounded: "Except as against the mortgagee the mortgagor while in possession and

before foreclosure is regarded as the real owner and a freeholder with the civil and political rights belonging to that character; whereas the mortgagee, notwithstanding the form of the conveyance, has only a chattel interest and his mortgage is a mere security for his debt." Kent's Comm. 160.

In this State the statutory view is that a mortgagor in possession is, as against every one but the mortgagee, the owner of the land, and that the mortgage is but an incumbrance upon his land. Numerous sections of the Public Statutes might be cited.

That this has always been the view taken by this Court is shown by numerous judicial dicta rather than by express decisions.

We think there is no doubt of the soundness of the view taken by the Court in *Cooper* v. *Cole*, 38 Vt. 185, and thus expressed by Judge Loyal C. Kellogg. "Until entry or foreclosure by the mortgagee, the mortgagor is, so far as the interest of all strangers or third persons, who may be connected with or interested in the mortgaged estate, may be effected, to be treated as remaining the owner of the estate, while the mortgagee is regarded as having only a mere lien or security."

This principle, though less guarded in its statement, is asserted in *Wilder* v. *Davenport*, 58 Vt. 642, 5 Atl. 753; *Hooper* v. *Wilson*, 12 Vt. 695, and in *Walker* v. *King*, 44 Vt. 601.

In *Wilson* v. *Hooper*, 13 Vt. 653, Judge Collamer stated the principle with considerable exactness, saying that the mortgagor even after condition broken is still the owner of the land subject to the right of the mortgagee.

The same principle is stated negatively and inferentially by Judge Steele in *Seaver* v. *Durant*, 39 Vt. 103, where he says that after the law day has expired and the mortgagee has taken possession the mortgagor has no legal interest in the land.

So Van Dyke being seized of the mortgaged premises remained their owner and was entitled to bring and maintain the suit in question, and the measure of his damages was the entire loss by the injuries to the property; for the impairment of the mortgage security did not in any way lessen the debt of Van Dyke to the mortgagee. Whether in such a case as

this a mortgagee is entitled to be represented in the trial and conduct of the cause, or to have some order, in respect to the judgment, made for his protection, or whether a defendant in such a case is entitled to have an order made for his protection against claims on the part of the mortgagee it is unnecessary, in this case, to consider, for here the mortgagee, by releasing and conveying all his interest to Van Dyke, the mortgagor, left himself without any interest to protect or assert. See *Powers* v. *Life Insurance Co.*, 69 Vt. 494, 38 Atl. 148; *Cole* v. *Kimball*, 52 Vt. 639.

The twentieth and the twenty-first claims read together assert that the defendant is not shown to be guilty of negligence in caring for any of the fires after they started; that there is nothing except the findings as to the condition, care and operation of the engines to show what the defendant ought to have done, how many men it should have had, what means that it did not employ it should have employed to prevent damages by fire, or what means, in fact, it did employ to guard against fires. These claims merely urge in another way matters already considered.

The twenty-second claim on the hearing upon the report reads as follows: "On the whole report the plaintiff is not entitled to recover and the defendant should have judgment for its costs," and the twenty-third claim reads: "On the whole report the plaintiff is not entitled to recover the amount of damages found by the referees in said report." These various twenty-six claims were expressly put in writing and furnished the trial court for the purpose of showing on the hearing upon the report what the claims of the defendant were, and the twenty-second and twenty-third claims amount to nothing more than general objections to the judgment on the report. Their effect will presently be considered.

The twenty-fourth claim was this: "The requests with which referees fail to comply and to which failure defendant has excepted are material and without a finding on each of these matters no proper determination of this case can be made." The matter of this claim we have considered in discussing the motion to recommit and the exceptions to the report of the referees.

The twenty-fifth claim is in these words: "No negligence alleged in the declaration is found in the report." This claim is not referred to in argument, as has already been pointed out, and the rule in case of a reference has already been stated.

The twenty-sixth and last claim presented to the trial court as a reason why judgment should not be rendered on the report is as follows: "Nothing appears in the report that makes defendant liable at common law." The matter of this claim has been disposed of in considering the nature of the case and the rule of reference.

In argument counsel for the defendant point out that there is in the report no finding of freedom from contributory negligence on the part of the plaintiff in respect to the communication of the fires in question nor in respect to the spread of the fires after they had started. It is settled in this State that when a fire has been started along the line of a railroad by an engine of the road and knowledge of the fire has been brought home to one whose property is threatened by it "it is the duty of such property owner to exercise the care and prudence of a prudent man to protect his property from destruction, and that for any destruction of property to which his failure to exercise such duty proximately contributes he cannot recover notwithstanding a shortage of duty on the part of the railroad company." *Ide* v. *Boston & Maine Railroad*, 83 Vt. 66, 74 Atl. 401; *Stebbins* v. *Central Vermont Ry. Co.*, 54 Vt. 464, 41 Am. Rep. 855.

With respect to the communication of the initial fire itself it is settled that "the property owner is not bound to anticipate negligence on the part of a railroad company and guard against it," and that "the lawful maintenance and use of property though injudicious or imprudent, does not in itself constitute, in legal sense, proximate contributory negligence." We have not said that there may not be such a thing as proximate negligece on the part of the property owner in respect to the very communication of the initial fire which will defeat recovery altogether. In common with many courts we have not yet found it necessary to lay down any general proposition upon this question, nor are we called upon so to do here. Neither the question of contributory negligence as a primary cause nor

as an intervening cause is presented by the exceptions in this case. We have above carefully reviewed the twenty-six claims made in writing to the county court as the reasons why judgment should not have been rendered on the report, and nowhere was the question of contributory negligence, or of any shortage in that regard in the report, suggested to the trial court. Nowhere in the bill of exceptions is there any intimation that the question of contributory negligence in either of its aspects was made at any stage of the case before the referees or before the trial court, where for the purpose of presenting all questions relied on, the claims which we have reviewed were presented. This being, so the defendant is confined here to the claims made below.

In *Needham* v. *Boston & Maine Railroad*, 82 Vt. 518, 74 Atl. 226, this Court declined to consider a claim that a verdict should have been set aside for the reason that it was not one of the grounds on which the motion below was based.

Even before the new rules it was considered that the assignment of special causes of demurrer showed the questions passed upon below, and that in such case this Court would not consider a ground of demurrer not so specified although general in its character. *Jenness* v. *Simpson*, 81 Vt. 109, 69 Atl. 646, 130 Am. St. Rep. 1029.

In *State* v. *Schoolcraft*, 72 Vt. 223, 47 Atl. 786, the Court refused to consider grounds of demurrer not raised below, and the respondent having pleaded guilty without prejudice to his exception and having been sentenced, judgment was rendered that there was no error in the proceedings and that the respondent should take nothing by his exceptions.

In *Vilas* v. *Downer*, 21 Vt. 419, a case coming up from the judgment of the county court on an auditor's report, it was held that the questions shown by the bill of exceptions to have been made in the county court were all that stood for consideration here, although it was not necessary that they should have been made in writing there. The rule with its reasons is clearly and convincingly stated in *State* v. *Preston*, 48 Vt. 12, where Judge Barrett, speaking for the Court, says: "It seems proper to be remarked, that when the bill of exceptions designates and specifies the point or points embraced within the judg-

ment of the county court, upon which alone question was made and exception taken, this Court will consider only such question and exception.   *   *   *   *   It is to be assumed where specific points are made and ruled and judgment rendered and exception taken, that other questions that might have been made but were not, were regarded by the county court as waived. *   *   *   *   Unless court and counsel are apprised in the court below that other matters, and what, are relied on as ground of objection and exception to the judgment, this Court will not knowingly entertain and consider questions as to such other matters."

Where it was conceded in argument in this Court that a question made under a general demurrer was not raised below it was held that it could not be raised here.   *Crane* v. *Darling,* 71 Vt. 95, 44 Atl. 359.

In *Sequin* v. *Peterson,* 45 Vt. 255, 12 Am. Rep. 194, a case which came up from findings of the court below it was forcibly said that "the habit that has sometimes prevailed of 'dragging' a case in this Court, as for something lost, to find a fault that was undiscovered and unheeded in the trial of a cause is ever unavailing to the client."

In *Hartford* v. *School District,* 69 Vt. 147, 37 Atl. 252, a party excepted to a judgment of the county court upon facts found by it, but it was held that this exception did not warrant the consideration of items entering into the judgment but not specifically objected to in the county court.

Where nothing more appears than that there was simply an exception to a judgment on facts found by the court, or by referees, or by an auditor or commissioner, it has been the practice to consider all questions that might have been raised on the facts found for then it is taken that all such questions were raised below or that the court was content to rule without the distinct presentation of the grounds of objection to the judgment. *Hogan* v. *Sullivan,* 79 Vt. 36, 64 Atl. 234.

If the defendant had asked the referees for a finding one way or the other upon the question of contributory negligence its request would doubtless have been complied with, but it did not so ask, as appears by its requests for special findings

which are set out in full. The motion for a recommittal of the report did not even remotely suggest that a finding on the question of contributory negligence was wanted. The exceptions to the report show no suggestion in that regard. Finally twenty-six claims were presented to the court as the defendant's reasons for objecting and excepting to the judgment on the report; and as we have seen no one of these claims suggested the absence of a finding in respect to contributory negligence. Obviously it would be subversive of a well settled and salutary rule of practice for this Court, sitting solely for the purpose of saying whether or not the county court committed error, to consider now the question of contributory negligence either in regard to the starting, or the spread, of the fires.

It is said in argument, and may be assumed to be true, that the defendant was bound to operate its trains in such a way as to afford reasonable accommodation to the public, and attention is called to the statements in the report, made in response to requests by the defendant, that there was no evidence that the defendant on the days when fires were communicated moved more or heavier trains than it was legally bound to move, that there was no evidence tending to show any special accumulation of freight that was unnecessarily moved on those days along the defendant's road in the vicinity of the fires in question, and that there was no evidence that two engines drawing a train would be any more likely to communicate fire than would two engines each drawing half of the same train. It was held in *Ide* v. *Boston & Maine Railroad*, 83 Vt. 66, 97, 74 Atl. 401, that the duty of a railroad company to exercise diligence to stop fires set by its locomotives must be considered with reference to its other duties. But there is nothing in the statements as to the evidence above referred to nor anywhere in the report to indicate that the state of the evidence was not fully considered and the principle of law just referred to properly applied by the referees. Though the company may have run no more and no heavier trains than it was bound to, and may not have been at fault in not dividing a train pulled by two engines and having one engine at the head of each division, still the defendant may have been at fault in the respects in

which the referees have found it was at fault. Besides, the claim now under consideration was not made below. When referees submit questions of law to the court, as the referees here did, they submit them to the county court and not to this Court, and, to repeat, whether or not those questions come before this Court depends upon the proceedings taken in the court below.

*Judgment affirmed.*